JAMES H. MCCABE et al., Appellants, *v.* CITY OF NEW YORK, Respondent.

Argued September 25, 1939; decided November 14, 1939.

*Leonard N. Snedeker, Ralph W. Crolly* and *Patrick J. Mahoney* for appellants.

351

*William C. Chanler*, Corporation Counsel (*Paxton Blair* and *Charles C. Weinstein* of counsel), for respondent.

*B. Meredith Langstaff* for Brooklyn Heights Association, *amicus curiæ*.

FINCH, J. This is a suit by interested property owners for a declaratory judgment that certain zoning amendments are void because they were adopted by a vote of ten to six and not unanimously by the Board of Estimate. Defendant interposed an answer and both parties moved for judgment on the pleadings. Special Term rendered judgment for plaintiffs, but the Appellate Division reversed and granted judgment for defendant.

The question presented is whether the Board of Estimate or the City Planning Commission is the appropriate body with which property owners should file their protests against changes in the zoning regulations in order to require an unanimous vote of the Board. In the case at bar the protests were lodged with the Board of Estimate and not with the Planning Commission. Nothing contained herein prevents the filing also of protests and any other appro-

priate action being taken before the City Planning Commission.

It is conceded and undisputed that in the case at bar the required number of property owners filed with the Board of Estimate protests against the Commission's plan, and that there was not an unanimous approval thereof by the Board of Estimate.

The determination of the problem depends on the interpretation to be given to section 200 of the New York City charter (effective January 1, 1938), which provides: "Any existing resolution or regulation of the board of estimate to regulate and limit the height and bulk of buildings (etc.) * * * may be amended, repealed or added to only in the following manner: the [City Planning] commission may upon its own initiative at any time or upon application as provided in section two hundred one, adopt *a resolution* for any such purpose subject to the limitations provided by law. Before adopting any *such resolution*, the commission shall afford persons interested an opportunity to be heard at a time and place to be specified in a notice of hearing to be published in the City Record for the ten days of publication of the City Record immediately prior thereto. Any *such resolution* shall be filed with the secretary of the board of estimate within five days from the date of its adoption. Unless the board of estimate shall modify or disapprove such resolution by a three-fourths vote within thirty days from the date of filing, it shall thereupon take effect, except that in case a protest against a proposed resolution shall have theretofore been presented, duly signed and acknowledged by the owners of twenty per centum or more of the area of the land included in such proposed change, * * *, such resolution shall not be effective unless approved by the board of estimate by unanimous vote of the entire board."

The new charter thus sought to relieve the Board of Estimate of some of the more burdensome features of zoning law administration by making provisions for them in a new city department known as the City Planning Com-

mission. To the latter were committed the preparatory work on amendments and changes in the zoning ordinance, as adviser in this particular to the Board of Estimate. The Planning Commission, either originally or at the instance of a petitioner, initiates a proposed zoning change, gives public notice of hearing, considers arguments for and against or in modification, and finally adopts its own resolution. This must then be filed with the Board of Estimate, which finally determines whether the proposed change shall become effective. However useful and arduous the duties and powers of the Planning Commission, they do not include that of final determination. This power and function resides in the Board of Estimate. It is true that if the Board of Estimate takes no affirmative action for thirty days, and if the requisite number of property owners have not lodged protests, a resolution of the Planning Commission may become effective. This, however, is but a method of approval by silence or inaction. The Board of Estimate may at any time within the thirty-day period, by the requisite three-fourths vote, amend in any way, or cancel, any proposal of the Planning Commission. It may also approve by unanimous vote, even though a sufficient number of property owners have protested. These two methods of approval by the Board of Estimate reduce still further the work of the Board of Estimate, and recognize that amendments to the Zoning Law may fall into one of two classes, (1) where the suggested change evokes little or no opposition from the property owners concerned, where the resolution may be approved by the mere inaction of the Board of Estimate, and (2) where the proposal is met with substantial opposition, consisting of twenty per cent or more of the area of land included in such proposed change, when the action of the Board must be unanimous.

Where must these protests be filed to be effective? Appellants contend that they must be filed with the Board of Estimate, and respondent contends that the same section requires the filing with the Planning Commission. In the case at bar they have been filed with the Board of Estimate,

and we are to determine whether the filing is sufficient. We hold that it is, for the following reasons.

The language of the statute (§ 200), read in the ordinary manner, does not indicate an intent to require that the protest of the property owners should be filed with the Planning Commission either before or after it formulates its resolution. Surely the language does not say so, but instead it would seem that the language requires a filing with the Board of Estimate. The words in section 200, " except that in case a protest against a proposed resolution shall have theretofore been presented * * *," would seem to contain a plain meaning. The word " theretofore " refers to the expiration of the thirty days from the date of filing. This would show that the protests should be filed with the Board of Estimate within thirty days from the date of filing. Moreover, that portion of the section which deals with such protests is the part of the section which deals with action by the Board of Estimate, and not the earlier part of the section which deals with the preliminary action of the Commission. Therefore, the language of the section would seem to require the filing with the Board of Estimate. A further consideration sustaining this contention is that the filing of protests have no compelling effect on the resolution of the Planning Commission. When once this resolution is adopted, it goes to the Board of Estimate as the resolution of the Planning Commission, and there is no provision that any of the proceedings before the Planning Commission, including any protests filed with the Planning Commission, shall accompany the resolution. Nowhere in the charter is there any provision requiring the Planning Commission to transmit to the Board of Estimate any notice of protest which may be filed with it. This lack of mandatory direction is an important factor in the conclusion to be reached. Furthermore, until the proposed resolution is finally resolved by the Planning Commission, the matter is embryonic and ambulatory. Until the resolution of the Planning Commission is finally adopted by it, it is impossible for the property owners to prepare their protests since until

that time the only notice that the property owners have had has been ten days' notice by publication of a proposed change. Until adopted, there is no certainty what form the resolution will take. Any protests obtained against the resolution as proposed become abortive if it is finally changed before adoption. Moreover, as the City Planning Commission obviously is taking a long range view of city planning, and considering the proposed change in the best interests of the city as a whole, such protests may be with good reason disregarded by the Planning Commission, and in any event would not limit the vote of the Planning Commission. On the other hand, protests filed with the Board of Estimate directly affect the vote required, and compel it to be unanimous in that Board.

Leading to the same conclusion is the fact that under the old charter, where the changes were initiated, heard and decided by the Board of Estimate and Apportionment, and protests were required to be filed with it, the change in the new charter has to do with the work of the Planning Commission created for the purpose of holding public hearings on zoning changes, asking advice and suggestions from the various parties, and of relieving the Board of certain onerous duties. If it had been the intent of the framers of the new charter to change the place of filing, express language to that effect would be required, particularly in view of the provisions of the old charter (L. 1901, ch. 466, as amd.) and of section 957 of the new charter, making the Board of Estimate the successor to the Board of Estimate and Apportionment, and so continuing in the new Board the powers and duties of the old Board.

Since the property owners have here duly complied with the requirements of the charter as to protest, and since the Board of Estimate did not by unanimous action approve the proposal of the Planning Commission, it did not become effective.

Except, therefore, for a slight modification hereinafter noted, the judgment appealed from must be reversed and that of Special Term reinstated. The judgment granted

at Special Term, in favor of plaintiffs, provided that a due protest filed within the thirty-day period after the resolution of the Planning Commission has been transmitted to the Board of Estimate, is effective to require an unanimous vote of that Board. This would lead to the result that, where the Board of Estimate has acted upon such a resolution before the expiration of thirty days, a filing of the protest subsequent thereto, but within thirty days, would require the unanimous re-enactment by the Board if the previous action had been other than unanimous. The Special Term went further, however, and held that the action of the Board after the filing of the protests must be had within the thirty-day period. Since the protestants are given the right to file the protest during the whole of the thirty-day period, the action of the Board could not well take place also within that period. A reading of section 200 would seem to require only that if the requisite number of protests have been duly filed, that then the action of the Board contrary to these protests must be unanimous, but such action need not take place within the thirty-day period.

The judgment of the Appellate Division should be reversed and that of the Special Term modified in accordance with the opinion herein, and as so modified affirmed, with costs in this court and in the Appellate Division.

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS, LOUGHRAN and RIPPEY, JJ., concur.

Judgment accordingly.