RICHARD H. NAPPI et al., Plaintiffs, *v.* FIORELLO H. LA GUARDIA et al., Constituting the Board of Estimate of the City of New York, et al., Defendants.

Supreme Court, Special Term, Queens County, March 17, 1944.

*Ignatius M. Wilkinson, Coropration Counsel (William S. Lebwohl* of counsel), for Board of Estimate of the City of New York and others, defendants.

*Sullivan & Cromwell* for Sylvania Electric Products, Inc., defendant.

*I. Robert Bassin, William A. Eckert* and *Norman L. Adolf* for plaintiffs.

FROESSEL, J. In a taxpayer's action for a declaratory judgment to invalidate an amendment to the Zoning Resolution of the City of New York and for injunctive relief, the

defendant Sylvania Electric Products, Inc., and the municipal authorities named defendants in the action, have separately moved for summary judgment, pursuant to rule 113 of the Rules of Civil Practice, dismissing the complaint upon the merits. By cross motion, the plaintiffs have likewise moved for summary judgment, but for the relief prayed for in the complaint.

All the parties concede that the pleadings, the exhibits attached thereto, the filed papers and the affidavits presented upon these motions, contain all of the pertinent facts which could be adduced at the trial of this action; that there is no controversy with respect thereto, for they are matters of public record; and that the only questions presented are questions of law which this court may determine upon the present applica tions. It may be observed, in passing, that the plaintiffs previously moved for an injunction *pendente lite*, urging the same grounds as upon their present application, but said motion was denied by order of this court, dated November 22, 1943.

The amendment attacked by plaintiffs is the addition of subdivision 10 to section 3 of article II of the Zoning -Resolution (and minor amendments related thereto in sections 3 and 4), which section 3 describes the character of buildings which may be erected in residence districts. Among the type of buildings which were permitted to be erected in such districts prior to the aforesaid amendment were clubs, public museums, court houses, fire houses, police stations, philanthropic institutions, hospitals and sanitariums, railroad passenger stations, farming, truck gardening, nurseries or green houses and certain designated accessory uses including private garages for not more than three motor vehicles. The amendment, subdivision 10, provides as follows: "(10) Administrative offices and industrial laboratory projects consistent with and designed to promote and benefit the value and use of property in residence districts or in areas which are predominantly residential although partly lying in less restricted districts. Such uses may be permitted only if approved in accordance with the following terms and conditions * * * ". (Here follow numerous terms and conditions, to which reference will presently be made.)

Briefly, the facts may be summarized from the public records as follows: The amendment was adopted by the City Planning Commission on June 30, 1943, after due notice and a public hearing, and filed with the Board of Estimate the following day. In due course, the matter came before the Board of

Estimate for consideration on July 15, 1943. At that time, a protest had been filed by one Lucy E. Hamlen, who owned land in Queens County, which protest was withdrawn by her some time later. After a hearing, a motion to disapprove the action of the City Planning Commission was lost by a vote of three to thirteen. Pursuant to section 200 of the New York City Charter (1938), the amendment thereupon became law on July 31, 1943.

Following the effective date of the said amendment, and pursuant thereto, the defendant, Sylvania Electric Products, Inc., applied to the City Planning Commission for approval of its project. In due course, after due notice and a public hearing, the City Planning Commission unanimously approved said project on September 22, 1943. Thereafter, the matter came on before the Board of Estimate on October 7, 1943, at which time no protests were on file, and a motion to disapprove the action of the City Planning Commission was lost, only one vote having been cast for disapproval. It might be observed here that the moving affidavit submitted on behalf of the plaintiffs sets forth a number of statements — inadvertently, I am sure — which are not borne out by the record.

Plaintiffs urge the illegality of the amendment upon the following grounds, as stated in their brief: " 1. The procedure followed by The City of New York was improper. 2. The amendment is actually ' spot zoning '. 3. The amendment is an unreasonable use of the police power and is therefore unconstitutional." These grounds will be separately considered in their order.

(1) Plaintiffs first maintain that the amendment should have been affirmatively passed by a three-fourths vote, or, at least by a majority vote, of the Board of Estimate, pursuant to the provisions of section 199 of the City Charter, which relates to the master plan of the city, instead of pursuant to section 200, which relates to " zoning regulations ." In this they are clearly in error. The New York City Charter Revision Commission in its Report [see New York City Charter and Administrative Code Annotated (Williams Press Co.), p. xxii] referred to the master plan thus: " The primary duty of the City Planning Commission is to make a master plan which should include not only the streets, bridges, parks, public places and transportation facilities, but the coordination of such facilities in a plan which will provide for the City the most convenient means of travel between centers of residence and of work and recreation." While section 197 of the Charter provides that

the master plan shall show " building zone districts ", in addition to a great variety of other public improvements, and while it is also true that zoning is an important element in planning, section 200 relates specifically to " zoning regulations ", it continues the " existing resolution or regulation of the board of estimate ", and provides the " only " procedure for their amendment. It was adapted from section 242-a of the former Greater New York Charter which, as to protests, contained similar provisions to those found in section 200, long before there was any provision for a master plan by the City. Moreover, the amendment did not change the building zone district lines in any way which could be reflected or located in the master plan. It merely added to the list of permissible uses, in districts already zoned for residence, a new subdivision, providing for administrative offices and laboratory uses under conditions and safeguards, not theretofore permitted.

Plaintiffs further maintain that even assuming section 200 of the City Charter applies, the action of the Board of Estimate should have been unanimous in view of the fact that a protest was filed by one Lucy E. Hamlen, the owner of 20% or more of the area of the land immediately adjacent to the approximately twenty-eight and one-half acres belonging to the defendant Sylvania Electric Products, Inc. This contention is also without merit.

In the first place, Mrs. Hamlen's protest was not filed in connection with the application relating to the Sylvania project, but in connection with the general amendment to the Zoning Resolution. The amendment did not relate to the so-called Sylvania tract, but affected residence-zoned property throughout the city wherever there was available a plot of not less than ten acres. In the second place, under the language of section 200, in order to require unanimous approval by the Board, it would appear to have been necessary for the owners of at least 20% of the tracts of ten acres or more in residential districts in the city, or the owners of at least 20% of the land immediately adjacent thereto for a distance of 100 feet, or the owners of at least 20% of the land directly opposite thereto for a distance of 100 feet, to protest. (*Morrill Realty Corp.* v. *Rayon Holding Corp.*, 254 N. Y. 268, 278.) Inasmuch as no such per centum of protests was filed, the requirement of section 200 for a unanimous vote never became operative and, therefore, the vote of thirteen to three was sufficient. In this connection it might be pointed out that when the first zoning enabling legislation was enacted (L. 1914, ch. 470, as amd. by

L. 1916, ch. 497), no provision whatever was made for the filing of protests with respect to the adoption of the *original* zoning resolution; as to amendments thereof, the procedure was somewhat similar to that provided for in present section 200.

In my opinion, said section 200 was the enabling act under which the amendment to the Zoning Resolution under attack was authorized. Its provisions were literally complied with, and the procedure was in all respects proper.

(2) Plaintiffs next urge that the amendment in question was passed to accommodate the defendant, Sylvania Electric Products, Inc., to locate at a specific place and that this constituted an effort on the part of the City authorities to " circumvent the known illegality of ' spot zoning ' ''. The plaintiffs do not define what they mean by " spot zoning ", but it may be gathered from the authority which they cite that zoning cannot be used as a cloak for arbitrary and capricious action by the officers entrusted with the operation of the statute. With this there can be no disagreement.

There is nothing in the amendment itself which has any reference to a particular location or project. The minutes of the hearing before the Planning Commission and the Board of Estimate clearly demonstrate that this amendment was intended by the municipal authorities to be city-wide in scope, and many of those who appeared and objected based their objections not upon the so-called Sylvania project, but upon the very fact that the amendment would permit such projects on plots of ten acres or more throughout the city. In other words, some of the objectors would have countenanced " spot zoning ", but the municipal authorities did not. Instead they adopted a general amendment which does not permit in one residential district that which is not permitted in another. All such districts became subject to the use contemplated by the amendment, if the procedure provided therein be followed.

In any event, the plaintiffs cannot dispute the action of the Board of Estimate in *legislating* the amendment, by claiming that only the Sylvania project was *then* considered, when the contrary is shown by the minutes of the hearing before the Board of Estimate. As stated by our Appellate Division in *Loos* v. *City of New York* (257 App. Div. 219, 223): " The action of a legislative body, as recorded in its journal, may not be attacked collaterally." Nor may the courts inquire into the motives of the Board of Estimate, nor go behind the duly enacted legislation of the Board in an attempt to seek a wrongful motive. As the Court of Appeals stated in *Matter of City*

*of New York (Ely Avenue)* (217 N. Y. 45, 59): " This court has recently held that the courts will not impute to the legislature or the discretionary action of municipal bodies clothed with legislative powers other than public motives for their acts; that the presumption that legislative action has been devised and adopted on adequate information and under the influence of correct motives will be applied to the discretionary action of municipal bodies and will preclude all collateral attack *(McCabe v. City of New York,* 213 N. Y. 468), and this rule has long been established by decisions of this court."

Moreover, it may be pointed out that the amendment in and by itself authorized no project whatsoever. It broadened rather than restricted the use, as was done in *Morrill Realty Corp.* v. *Rayon Holding Corp.* (254 N. Y. 268, *supra*) where premises formerly in a residence district were assigned to a less restricted retail business district. It requires subsequent separate approval of each project submitted to the City Planning Commission and the Board of Estimate. Such a requirement is both reasonable and proper. Our Court of Appeals has upheld the right of zoning authorities to withhold general approval and require that each project be submitted for separate authorization. *(Green Point Sav. Bank* v. *Zoning Appeals Board,* 281 N. Y. 534.) Of course, in approving or disapproving a particular project, the action may not be arbitrary or discriminatory and no such question is presented here. It may not be assumed in advance that the duly elected city officials would not approve any proper project or would not disapprove an improper one which may be presented to them.

It is probably true that the adoption of the present amendment was in part stimulated by the action of an agency of the Federal Government, as evidenced by its letter of January 21, 1943, to the City Planning Commission and set forth in the moving affidavit submitted by plaintiffs, which letter stressed the proposed Sylvania project, but it cannot be said that the amendment was intended to cover this project alone. The municipal authorities claim that for a considerable time they have been giving serious consideration to zoning amendments which would afford inducements to business concerns to locate their administrative offices and desirable laboratories in the city. Concededly, these would be an aid to employment in the city, and assist in the raising of tax revenue. The mere fact that Sylvania happened to be the first project to be submitted, and was concededly interested in the adoption of the amendment, does not detract from its legality. Any like establishment

desiring to locate in the city upon a plot of ten acres or more in a residential area, and to comply with the safeguards and submit to the restrictions imposed by the Planning Commission, is afforded the same opportunity.

There is no basis for plaintiffs' second contention.

(3) The final ground of invalidity urged by the plaintiffs, namely that the amendment is an unreasonable use of police power and therefore unconstitutional and void cannot, in my opinion, be sustained. Reference has already been made to the uses permitted in a residence district prior to the adoption of the amendment in question. None of these permitted uses is subject to substantial safeguards and protective devices as are contained in the amendment which added the tenth subdivision to section 3. Among these safeguards are the following:

1. Every authorized project shall occupy at least ten acres.

2. Not more than 25% of the land shall be occupied by buildings and structures.

3. Not less than 25% shall consist of a landscaped park area to which the public shall have access, subject to reasonable restrictions.

4. The aggregate floor area of the buildings and structures shall not exceed one half of the area of the plot.

5. Buildings shall be at least twenty feet apart with adequate light and air.

6. No building or structure shall exceed fifty feet in height.

7. The location and design of all buildings and structures shall be consistent with the predominantly residential character of the district and shall be designed to promote and benefit the value and use of property in such district.

8. In no event shall trades proscribed by subdivisions (a) and (b) of section 4 be permitted.

9. Plans must be submitted to the City Planning Commission.

10. The City Planning Commission " after public notice and hearing " may approve the project and impose " appropriate conditions and safeguards ", or may disapprove.

11. Elected officials of the City, namely, the members of the Board of Estimate who finally determine the matter, may thereupon disapprove by a majority vote.

12. If the owners of 20% or more of 100 feet of the land immediately adjacent to or opposite such proposed project protest, approval by the Board of Estimate must be by unanimous vote, which constitutes a most effective check on approval.

13. No changes in the project as shown on the plans approved shall be permitted without following the same procedure as originally required.

14. If the project is abandoned, the land and structures may only be used for any other lawful purpose permissible within the district.

The whole record presented to this court indicates a careful, painstaking inquiry into the wisdom and propriety of the amendment, which the municipal authorities found desirable for the best interests of the city and its residents generally; at the same time, terms, conditions and safeguards were imposed and the procedure outlined that afforded ample protection to those who may be immediately affected by a particular project. Those charged with the duty of making a legislative decision have made that decision after a full and detailed consideration and nothing has been submitted by the plaintiffs which justifies interference by the court. (*McCabe* v. *City of New York,* 213 N. Y. 468, 480, 485.)

In *Lincoln Trust Co.* v. *Williams Bldg. Corp* (229 N. Y. 313, 317) which is the first decision in this country upon the subject of a comprehensive zoning ordinance, the court stated the applicable rule thus: '' In a great metropolis like New York, in which the public health, welfare, convenience and common good are to be considered, I am of the opinion that the resolution was not an incumbrance, since it was a proper exercise of the police power. The exercise of such power, within constitutional limitations, depends largely upon the discretion and good judgment of the municipal authorities, with which the courts are reluctant to interfere. The conduct of an individual and the use of his property may be regulated. (*Village of Carthage* v. *Frederick,* 122 N. Y. 268; *People* v. *Gillson,* 109 N. Y. 389; *Matter of Jacobs,* 98 N. Y. 98.) In the exercise of the police power the uses in a municipality to which property may be put have been limited and also prohibited.''

In *Matter of Wulfsohn* v. *Burden* (241 N. Y. 288, 298) speaking of the same subject matter, Chief Judge HISCOCK said: '' The power is not limited to regulations designed to promote public health, public morals or public safety or to the suppression of what is offensive, disorderly or unsanitary but extends to so dealing with conditions which exist as to bring out of them the greatest welfare of the people by promoting public convenience or general prosperity. (*Bacon* v. *Walker,* 204 U. S. 311, 317, 318.)''

And at page 302: '' It is not an effective argument against these ordinances, if otherwise valid, that they limit the use and may depreciate the value of appellant's premises. That fre-

quently is the effect of police regulation and the general welfare of the public is superior in importance to the pecuniary profits of the individual. (*Spector* v. *Building Inspector*, 250 Mass. 63, 70.)" (See, also, *Baddour* v. *City of Long Beach*, 279 N. Y. 167, 173, 175.)

The United States Supreme Court in *Euclid* v. *Ambler Co.* (272 U. S. 365; Note, 54 A. L. R. 1030), said at page 388: "If the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control", and at page 393: "' We have nothing to do with the question of the wisdom or good policy of municipal ordinances.' "

Inasmuch as zoning is a legislative function (*Green Point Sav. Bank* v. *Zoning Appeals Board*, 281 N. Y. 534, *supra; McCabe* v. *City of New York*, 281 N. Y. 349, 353; *Ulmer Park Realty Co.* v. *City of New York*, 267 App. Div. 291), and in the light of the authorities, the attack upon the amendment on constitutional grounds must fail.

Nor can it be seriously contended that the failure to disapprove the Sylvania project assumed the character of a merely arbitrary fiat. It is located close to the water front. Surrounding it is a substantial undeveloped area. There are but two residences within a thousand feet of the center of the project. To the northwest, north and northeast, the property is completely insulated by the Cross Island Parkway and the East River. To the west and south it is insulated by Clearview Park to a depth of from 750 to over 2,000 feet. On the southeast it is insulated to a depth of almost 3,000 feet by undeveloped land. Affidavits were submitted in opposition to the motion for a preliminary injunction by the owners of this land to the effect that they did not disapprove of the project, and that it was for the benefit of the community, and by another owner immediately to the east, who stated that the proposed project would not be detrimental to his property. Thus, no adjacent landowner complains of Sylvania's proposed use. The record of the hearings in this case discloses that ultimately most of the objectors conceded that the so-called Sylvania project may be a benefit, but they feared that in future cases the amendment may be a detriment. We must assume that our public officials will not act capriciously or arbitrarily, and that they will approve projects with wisdom and discretion in undeveloped areas where communities have not as yet been established.

The testimony given at the hearings also indicates that the type of project contemplated by the amendment could be attracted only in a highly zoned district. Companies would

not be interested in an industrial or unrestricted district, because the character of the work to be done required a locality having serenity and quiet. No organization would be interested in spending large sums of money in beautifying a tract in the midst of an unrestricted or industrial area. Industries of the character in question might well establish administrative offices and research laboratories on unused or neglected lands by establishing attractive and inoffensive surroundings, and thereby induce building by others in the surrounding area, at the same time furnishing additional employment and tax revenue for the city.

When the first zoning resolution was adopted for the City of New York, it was greeted by many with much concern, but it is now conceded by everyone that it was a forward step in city planning. Whether the present amendment is likewise a step in the right direction time alone will tell, but the highest court in the land has stated that under these circumstances the courts are powerless to interfere with the discretion exercised by the city legislators. (*Euclid* v. *Ambler Co.,* 272 U. S. 305, *supra.*) In this connection it may be well to recall the words of the late Chief Judge CARDOZO in *Hesse* v. *Rath* (249 N. Y. 436, 438) when he said: '' The need for vision of the future in the governance of cities has not lessened with the years. The dweller within the gates, even more than the stranger from afar, will pay the price of blindness.''

It follows that the defendants' motions for summary judgment must be granted and the plaintiffs' cross motion for summary judgment denied.