431 FIFTH AVENUE CORPORATION, Plaintiff, v. CITY OF NEW YORK, Defendant.

Supreme Court, Special Term, New York County, April 27, 1945.

1002

*Ignatius M. Wilkinson,* Corporation Counsel (*William S. Lebwohl* and *Rose Schneph* of counsel), for defendant.

*Samuel D. Smoleff* for Citizens Union of the City of New York, *amicus curiæ.*

*Edward Weinfeld* and *Shirley Adelson* for Citizens' Housing Council of New York, Inc., *amicus curiæ.*

*Paul Windels* and *David B. Tolins* for plaintiff.

SHIENTAG, J. The complaint states three causes of action for declaratory judgment. The first cause of action alleges, in substance, that on November 1, 1944, the City Planning Commission adopted a resolution proposing amendments to the existing Building Zone Resolution (N. Y. City Zoning Resolution, eff. June 28, 1940, as amd.) Plaintiff's property is located in a Restricted Retail District, as to use (§ 4-B), and in a B Area District as to the area of permissible lot coverage (§ 12). The resolution of November 1, 1944, broadly speaking, reduced the permissible height of buildings and, what is more important, the amount of lot coverage. In a B Area District it provided that no building may be constructed which covers more than

65% of the area of the lot, if an interior lot, such as the plaintiff's. It is further alleged that, because of protests filed against the Zoning Resolution by property owners affected, pursuant to section 200 of the New York City Charter (1938), the Zoning Resolution, and particularly that part of it dealing with restricted lot coverage as applied to lands in Retail Districts in B Area, could only be made effective by a unanimous vote of the Board of Estimate, which was not obtained.

The second cause of action alleges that, as applied to the plaintiff's property, the entire resolution is so unreasonable and confiscatory as to exceed a permissible exercise of the police power and is therefore invalid.

The third cause of action charges that section 200 of the Charter is illegal and unconstitutional insofar as it attempts to confer upon the Board of Estimate power to enact zoning legislation by a minority vote or by inaction.

Briefly stated the answer, as amended, concedes that the protests alleged in the first cause of action were filed, as therein set forth, but denies that those protests were sufficient to require unanimous approval by the Board of Estimate. The material allegations of the second cause of action are denied and two separate affirmative defenses thereto are set up: first, that the action is premature and academic, plaintiff not having filed plans or indicated any present intention to construct a new building; second, that plaintiff has not exhausted an administrative remedy provided by the Building Zone Resolution since it has not applied to the Board of Standards and Appeals for a variance. As to the third cause of action the answer denies the allegations charging the illegality of section 200 of the Charter.

The defendant moves (1) to dismiss the complaint as insufficient in law; (2) for summary judgment dismissing the complaint upon the ground that complete defenses are established by public records and documentary evidence.

The plaintiff moves (1) for judgment on the pleadings as to the first and third causes of action which it contends present only questions of law; (2) to strike from the answer for legal insufficiency the defendant's first and second separate defenses to the second cause of action; (3) to strike from the answers Exhibits A to H as repetitious and not properly part of a pleading; and (4) to exclude as improper the affidavits submitted by the defendant in support of its motion for summary judgment.

The Zoning Resolution, attacked in this action, was adopted pursuant to section 200 of the New York City Charter which is set forth fully in the footnote.[*]

1. Were the protests, alleged in the first cause of action, sufficient to require unanimous approval by the Board of Estimate of the zoning change set forth in that cause of action?

For zoning purposes the city is divided by the Building Zone Resolution and maps attached thereto into three types of districts which overlap: (1) Use Districts (Residence, Retail, Business, Unrestricted, etc.). This classification determines the use to which buildings erected in the district may be devoted. (2) Height Districts, which regulate the height to which the street front walls of buildings therein may be erected at the building line. This height is proportioned to the width of the street. (3) Area Districts (A to H inclusive) which regulate the area of ground which buildings erected therein may occupy.

A prospective builder, therefore, must consult the maps for each of the three types of district classifications to determine: the use to which he may put his proposed building (Use District); how high the street wall may be at the building line

[*] "§ 200. Any existing resolution or regulation of the board of estimate to regulate and limit the height and bulk of buildings, to regulate and determine the area of yards, courts and other open spaces or to regulate and restrict the locations of trades and industries and the location of buildings designed for specific uses or creating districts for any such purpose, including any such regulation which provides that the board of standards and appeals may determine and vary the application of such resolutions or regulations in harmony with their general purpose and intent and in accordance with general or specific rules contained in such regulations, may be amended, repealed or added to only in the following manner: the commission may upon its own initiative at any time or upon application as provided in section two hundred one, adopt a resolution for any such purpose subject to the limitations provided by law. Before adopting any such resolution, the commission shall afford persons interested an opportunity to be heard at a time and place to be specified in a notice of hearing to be published in the City Record for the ten days of publication of the City Record immediately prior thereto. Any such resolution shall be filed with the secretary of the board of estimate within five days from the date of its adoption. Unless the board of estimate shall modify or disapprove such resolution by a three-fourths vote within thirty days from the date of filing, it shall thereupon take effect, except that in case a protest against a proposed resolution shall have theretofore been presented, duly signed and acknowledged by the owners of twenty per centum or more of the area of the land included in such proposed change, or by the owners of twenty per centum or more of the area of the land immediately adjacent extending one hundred feet therefrom, or by the owners of twenty per centum or more of the area of land directly opposite thereto extending one hundred feet from the street frontage of such opposite land, such resolution shall not be effective unless approved by the board of estimate by unanimous vote of the entire board."

(Height District); and how much of his plot he may occupy (Area District). Zoning regulations are not retroactive; they apply only to buildings constructed after the adoption of the regulations.

Plaintiff's property is a six-story building on a lot twenty feet wide on the east side of Fifth Avenue between 38th and 39th Streets, Manhattan. The present building covers 100% of the plot, the maximum permitted when the building was erected. Although there are allegations indicating that it is an inadequate development for the property, no plans have been filed for the construction of any new improvement.

The original city-wide Zoning Resolution was passed in 1916. From that time and up to November 1, 1944, when the amendments now under consideration were adopted by the City Planning Commission, there had been no general overhauling of the original city-wide zoning regulations. Realizing that there was no present building activity and that building would not be resumed until some time after the war, the Commission seized upon the opportunity to prescribe more thoroughgoing restrictions for future construction. For all practical purposes, although not completely so, the resolution of November 1, 1944 is city-wide in scope.

No changes in Use Districts were embodied in the resolution of November 1, 1944. That resolution reduced the permissible height of buildings in some of the Height Districts of New York City, and it amended the Area Districts for a large part of the city (A, B, C and D area Districts) by making applicable for each Area District the standards previously applicable to the next most restricted district.

Thus the resolution contained, among other provisions affecting Height Districts and other Area Districts, a new provision for B Area Districts as follows:

" § 12. B Districts.

" (b) In a B district no building used for residence, and no non-residential building located in a residence district, in a local retail district, in a restricted retail district, in a retail district, or in a retail — 1 district, as designated on the amended use district map, shall occupy at the curb level more than 65 per cent of the area of the lot, if an interior lot, or 80 per cent if a corner lot, exclusive in each case of lawful garages. In computing such percentage any part of the area of any corner lot in excess of 5,000 square feet shall be considered an interior lot."

This section, by its terms, applied to B Area Districts in the entire city; it embraces buildings whether in a Residential Use District or in any type of Retail Use District in the B Area District.

On November 1, 1944, after notice and public hearings, at which interested parties were heard, as required by the Charter, the City Planning Commission adopted a resolution embodying amendments to the existing Building Zone Resolution as heretofore outlined; on the same day the Commission's resolution was filed with the Secretary of the Board of Estimate. Within thirty days thereafter there were concededly filed with the Board of Estimate written protests against the Resolution, " and against the changes of zoning provided for therein, duly signed and acknowledged by the owners in fee of more than twenty per centum of the area of land included in the proposed zoning change contained in Section 12 of the said Resolution * * * to the extent that such proposed change affects B Area Retail Districts." On November 30, 1944, after public hearings, the Board of Estimate acted on the resolution of the City Planning Commission. The motion as presented to the Board was to disapprove the resolution. The motion failed of adoption, six votes being cast in favor of its disapproval and ten votes in opposition thereto.

Section 200 of the Charter provides that unanimous approval of the Board of Estimate is required to make effective a zoning change, if written and acknowledged protests are filed by the owners of 20% of " the area of the land included in such proposed change ". It does not define the term " area of the land " and the court is asked in the instant case to supply that definition by a construction of the section.

The original statute authorizing the adoption of zoning regulations in New York City made no provision for special action in case of protests by property owners (L. 1914, ch. 470). In 1916, the law was amended so as to require a unanimous vote of the Board of Estimate in the event of a 20% protest (L. 1916, ch. 497). The history of the provision, now in section 200 of the Charter, is traced in *Morrill Realty Corp.* v. *Rayon Holding Corp.* (254 N. Y. 268, 279).

After 1916, the amendments made to the basic Zoning Resolution have been piecemeal and addressed, for the most part, to peculiarly local situations in particular neighborhoods; they have dealt with a single clearly defined area. There was usually no doubt therefore as to the scope of " the area of the land included in the proposed change ". Here, however, we are

concerned with an entirely different type of amendment to the zoning law. Grouped together in one resolution are a number of different changes affecting different areas, but all of them interrelated, because all go to make up one comprehensive, harmonious plan of zoning for practically the entire city.

It seems a fair assumption that the draftsman of the 1916 provisions for a 20% protest, now incorporated in section 200 of the Charter, did not have in mind a situation in which the Planning Commission would propose what are virtually city-wide changes. The amendment was rather addressed to piecemeal adjustments in the underlying plan which might become necessary with changing conditions in the city's streets. The language is plainly adaptable only to such narrower purpose: "area of the land included in such proposed change"; "area of the land immediately adjacent extending one hundred feet therefrom"; or "area of land directly opposite thereto extending one hundred feet from the street frontage of such opposite land". These phrases are not quite appropriate where complete areas or entire districts are brought under new restrictions; particularly is this so when the new restrictions cover virtually the entire city. The result is that when a large area is affected and is deemed to be "the area of the land included in a proposed change" the right of protest may be illusory. It is hardly feasible to collect, within the thirty days permitted, the protests of the owners of 20% of all of the land affected by the change.

The City argues that it is not a compliance with the Charter provision unless the 20% requirement is applied to the owners of all of the land affected by all of the changes. On the other hand the plaintiff argues that even though the Zoning Resolution is virtually of city-wide application, some "lesser area" should be taken for the purpose of determining the area of protest; that such "lesser area" should be any single, clearly defined, separable area affected by the change; and that the owners of 20% of the land in that area may, by their protest, bring into action the requirement of a unanimous vote of the Board of Estimate. There are cogent arguments in support of both contentions, and whichever interpretation we choose will involve serious sacrifices. If we accept the City's contention, the 20% protest provision would, as a practical matter, be inoperative in a city-wide zoning plan reorganization. If we accept the plaintiff's contention, and carry it to its logical conclusion, it would make an orderly, logical, sound city-wide zoning resolution extremely difficult, if not impossible, of attainment.

The only "lesser" area that may possibly be used under section 200 of the Charter as the basis for protest is all the land affected by the change, which is included in the B Area District. Although the restrictions governing the B Areas are closely interrelated to those imposed upon other Area Districts in the city, the B Area District is a clear, well-defined entity. The restrictions for each Area District are separately stated in the Resolution, and are different for each such District.

The plaintiff would start with the B Area District, but would go further and limit the area employed as the unit for protest to the Retail Use Districts in the B Area Districts throughout the city. To make the " use " the ambit of the area for protest purposes, when the use has not been made the basis of any change in zoning restrictions, is to put something into the statute which is not there, and which there is no compelling reason for the court to put there. Particularly is this so where any such judicial effort would not result in a definitive, easily administered rule of thumb, but would instead embroil the courts in many and difficult efforts in defining and applying its interpretation.

Undoubtedly there is great force to the plaintiff's contention that the problems of users of land for retail establishments are different from those of owners of land used for residences. The existence of such a difference in problems, however, does not provide the basis for defining an area of land, included within the change, for protest purposes. The test is not so much whether the changes may be separable, but whether they were treated in the resolution or considered as separate by the Commission and by the Board of Estimate. Almost every amendment to the zoning law in Height or Area Districts may affect varying Use Districts differently (or vice versa), but that is no reason for maintaining that each such difference affords a basis for defining some land area as a separate, distinct unit for protest purposes.

Provision for unanimous action by a governing body like the Board of Estimate of the City of New York is a most drastic and extraordinary one and it should only be invoked when demanded by a clear, unambiguous expression of legislative policy and intent. Property owners now have the protection of what is, or is intended to be, an expert City Planning Commission to which is given the facilities for making comprehensive, scientific surveys and investigations; they have the further protection of the power of veto conferred upon the Board of Estimate, and an opportunity to be heard before both the Com-

mission and the Board; in case of unique hardship a particular property owner affected may have relief in the form of a variance by the Board of Standards and Appeals; and finally there is the power of the courts to deal with arbitrary, confiscatory exercise of governmental authority. If additional protection is needed for property owners by way of more time to file protests, or greater power to the Board of Estimate, or less burdensome requirements for protest where wide areas are affected by proposed zoning changes, those are matters for the Legislature and not for the courts.

Although the definition of the term " area " in section 200 of the Charter has never been judically determined, the cases of *Morrill Realty Corp.* v. *Rayon Holding Corp.* (254 N. Y. 268) and *Nappi* v. *La Guardia* (184 Misc. 775, affd. 269 App. Div. 693) while not analogous, lend support to the views here expressed. The defendant's motion to dismiss the first cause of action is granted and the plaintiff's motion for judgment on the pleadings as to this cause of action is denied.

2. The second cause of action attacks the validity of the purported zoning amendment as an unreasonable exercise of the police power. It alleges that the zoning amendments complained of (the restrictions and limitations as to height, coverage, setbacks, yard and building area requirements imposed by the resolution of November 1, 1944) are confiscatory and are " unreasonable, arbitrary, capricious and impulsive and were adopted without any well considered zoning plan and without any basis in fact for the zoning changes ". The defendant moves for summary judgment dismissing this cause of action on the basis of what it terms documentary evidence and matters of official record. Without passing on the question as to whether the matters presented in the moving affidavits constitute documentary evidence and matters of official record, within the meaning of the summary judgment rule (Rules Civ. Prac., rule 113), it must be held there is a fairly plausible basis for the claim that the resolution, at least insofar as it limits ground floor coverage, is arbitrary and confiscatory in its application to Retail Use Districts. The Comptroller of the City of New York expressed misgivings on that score although he voted against the motion to disapprove the resolution of the City Planning Commission. In such a situation summary judgment is not the appropriate remedy.

The question remains as to the legal sufficiency of the separate defenses to this cause of action. The first defense is that the action is premature because the plaintiff does not show that

it has any plans under way for new construction or rebuilding. This defense is based upon the decision in *Headley* v. *City of Rochester* (272 N. Y. 197). There is, however, a substantial distinction on the facts between the instant case and the *Headley* case (*supra*). Here the complaint may be read as stating a grievance, actual or potential, on behalf of a large group — indeed of all of the owners of property devoted to Retail Use in B Area Districts. It may be said that more is involved than merely the unique problem of a particular land owner. It is sound public policy, in a situation such as is here presented, for the court to exercise its discretion and to allow the remedy of declaratory judgment in order to secure an expeditious determination of the broad questions presented.

The second separate defense is that the plaintiff should have applied for a variance and that in failing so to do it has not exhausted its administrative remedies. Undoubtedly a land owner who is uniquely affected by a zoning regulation of general import and who suffers unusual hardship because of the peculiar application of the regulation to his property must apply for a variance before judicial action is open to him. Giving to the complaint the most favorable inferences to be drawn from its allegations, it appears, broadly speaking, that the plaintiff is bringing an action in the nature of a class suit; in any event that it is attacking generally the application of the amendments to a considerable area embracing many separate parcels. As the plaintiff points out, it would seem evident that the function of the Board of Standards and Appeals " is to deal with unique and special circumstances resulting in hardship in the application of a valid and generally beneficial regulation. It was not created to correct errors of judgment in zoning which have a widespread and general effect and in which the damage is done by the defects in the regulation itself. That is a legislative function. In the instant case the hardship is not unique. It is common to all other parcels of small size. The invasion of the plaintiff's rights is in the very fact of invalidity because of the unreasonableness of the amendment in its general effect ". (*Euclid* v. *Ambler Co.*, 272 U. S. 365, 386; *Dowsey* v. *Village of Kensington*, 257 N. Y. 221, 228; *McCabe* v. *City of New York*, 170 Misc. 325, mod. 281 N. Y. 349; *Ulmer Park Realty Co.* v. *City of New York*, 267 App. Div. 291.)

The defendant's motion with respect to the second cause of action is accordingly denied, and the plaintiff's motion to strike out the first and second separate defenses is granted.

3. The third cause of action alleges that section 200 of the Charter is illegal, unconstitutional and void, it being claimed that it attempts to confer upon the Board of Estimate power to enact zoning legislation by a minority vote or by inaction.

In organizing cities the Legislature may distribute executive and legislative powers as it chooses (*Matter of Mooney* v. *Cohen*, 272 N. Y. 33; *Matter of LaGuardia* v. *Smith*, 288 N. Y. 1). Thus the Legislature could have deprived the Board of Estimate altogether of any authority in respect to zoning and vested that power in such agencies as it deemed proper. Whether the function of zoning be regarded as quasi-legislative or wholly legislative, it might have been delegated completely to the City Planning Commission. The Legislature chose instead to vest the zoning authority in an expert body, the City Planning Commission and the Board of Estimate jointly, giving the latter body a right to override the expert body, but only by a weighted vote — a three-fourths vote.

The plaintiff's entire contention as far as this third cause of action is concerned, is based wholly upon the assumption that the Charter places the power to zone in the Board of Estimate. The question therefore becomes one of statutory construction. Whatever may have been said on the subject in the Report of the New York City Charter Revision Commission (and it is unnecessary to consider whether or not plaintiff correctly interprets that report) the legislation as enacted is clear and unambiguous on this point. The power to zone was not given to the Board of Estimate; it was delegated to the City Planning Commission, subject only to a veto power in the Board.

This section of the Charter has been before the courts a number of times but its validity has never been attacked. Observations made by the courts as to the respective functions of the City Planning Commission and the Board of Estimate in cases in which the validity of section 200 of the Charter was unquestioned are not decisive of the question here directly presented. (See *Ulmer Park Realty Co.* v. *City of New York*, 267 App. Div. 291, 293; *McCabe* v. *City of New York*, 281 N. Y. 349, 353.) The section is valid and constitutional and the third cause of action must be dismissed.

4. The plaintiff's criticism of the defendant's action in annexing Exhibits A to H inclusive to its answer is well founded. Such exhibits are not properly part of a pleading. They will be stricken out as exhibits to the answer, but to the extent that they are incorporated in affidavits submitted in support of the

motion for summary judgment, they may stand. The court has not power to strike out affidavits submitted in support of a motion under rule 113.

5. To summarize, therefore, the motion of the defendant to strike out the first cause of action as insufficient in law is granted; its motion to dismiss the second cause of action is denied; its motion to dismiss the third cause of action is granted.

The plaintiff's motion for judgment on the pleadings with respect to the first and third causes of action is denied; its motion to strike out the first and second affirmative defenses to the second cause of action is granted; its motion to strike out Exhibits A to H attached to the answer is granted, but those exhibits may be considered as part of the defendant's motion for summary judgment; its motion to strike out the affidavits used on the motion for summary judgment is denied. Settle order in accordance with the foregoing determination.