CONGREGATION BETH ISRAEL WEST SIDE JEWISH CENTER, Respondent, v. BOARD OF ESTIMATE OF THE CITY OF NEW YORK et al., Defendants, and LINCOLN PARKING CORPORATION, Appellant.

First Department, April 12, 1955.

*Simon H. Rifkind* of counsel (*J. Jacques Stone* and *Edward N. Costikyan* with him on the brief; *Paul, Weiss, Rifkind, Wharton & Garrison,* attorneys), for appellant.

*Paxton Blair* of counsel (*Raymond J. Horowitz* with him on the brief; *Paxton Blair,* attorney), for respondent.

BOTEIN, J. Defendant Lincoln Parking Corporation (hereinafter called Lincoln) has for more than twenty years maintained an open parking lot, accommodating 350 cars, on the north side of 34th Street between Eighth and Ninth Avenues. The parking lot, until recently, was immediately adjacent to the structure occupied as a synagogue by plaintiff. About two years ago a building was erected on what had been the westerly portion of the original parking space. The easterly portion, separated from the synagogue by the new building, is still operated as an open parking lot.

On December 30, 1953, Lincoln applied, pursuant to section 21-F of the Zoning Resolution of the City of New York, for approval of the erection upon the site of the present parking lot of a modern, fireproof public garage designed to hold 450 cars. Section 21-F, to the extent that it is pertinent, provides as follows: " (b) Except where § 21-A of this Resolution applies in other than manufacturing and unrestricted use districts, the City Planning Commission may by resolution after public notice and hearing approve the use, subject to appropriate conditions and safeguards, of any building or premises as a garage or parking facility for one hundred and fifty (150) or more motor vehicles * * *. Such resolution of approval, together with a copy of the site plan, shall be filed with the Secretary of the Board of Estimate within five (5) days of its adoption. It shall take effect immediately upon approval by a majority vote of the Board of Estimate. * * * (c) * * * Nothing contained in this Section shall divest the Board (of Standards and Appeals) of its jurisdiction to vary the terms of the Zoning Resolution as provided in § 21 thereof. An

applicant who has failed to receive a site approval under this Section may apply to the Board under § 7 to vary in the instant case the application of the Zoning Resolution."

The proposed garage lay in a retail use district, and so had to conform to the provisions of section 21-A. Section 21-A, as it then read, prohibited the operation of garages having a vehicular entrance within 200 feet from an entrance or exit of a school maintained by an established religious group.

On March 3, 1954, defendant city planning commission unanimously passed a resolution approving Lincoln's application to construct a garage of specified character, dimensions and capacity. One of a number of circumscribing conditions was " That no facilities shall be provided for gasoline service or oil selling or the repairing of motor vehicles ". On March 11, 1954, defendant board of estimate unanimously approved the action of the city planning commission.

The actions of both the planning commission and the board of estimate followed public hearings, duly noticed, at both of which plaintiff appeared and opposed the application strenuously. Plaintiff's major contention was that it maintained a school in the synagogue building and because of that fact, under section 21-A of the zoning resolution as it read prior to amendment, the commission lacked the power in the first instance to authorize construction of the proposed garage.

Plaintiff had conducted a small religious school for a number of years, which was within the proscribed distance from the projected garage. In the year 1952–1953, the school had ten pupils. In 1953–1954, it had no pupils or teachers and was not in operation. Plaintiff termed this a temporary suspension of the school, caused by resignation of the directing rabbi and the difficulty encountered in finding a successor.

The planning commission and the board of estimate found that plaintiff was not operating a school — at least within the contemplation of section 21-A. Defendants contend that in any event the issue of whether plaintiff does in fact conduct a school no longer survives, because on May 29, 1954, the board of estimate approved and enacted a resolution of the planning commission amending section 21-A. It narrowed the restriction against the operation of garages so as to exclude only such garages as sell gasoline and oil. Lincoln's application had been approved on condition that it provide no facilities for the sale of such commodities. Therefore, even if plaintiff maintains a school, the proposed garage does not offend section 21-A, as amended, provided that amendment is valid.

Plaintiff's amended complaint seeks an injunction restraining defendant Lincoln from applying for any building permit or from proceeding to construct the proposed garage. It alleges that the religious school is still in existence. It further asserts that section 21-F is void and that the amendment to section 21-A of the zoning resolution is unconstitutional and void, and it seeks a declaratory judgment to that effect.

Special Term, in denying defendant Lincoln's motion for summary judgment, held that it should not reach the constitutional questions raised, since there were two issues of fact that first had to be resolved. These questions were: (1) whether in fact plaintiff's religious school was no longer in existence within the meaning of section 21-A before its amendment; and (2) whether the action of the board of estimate in approving Lincoln's application was for the benefit of Lincoln alone or for the benefit of the public.

Lincoln appeals from the order denying its motion for summary judgment. Defendants board of estimate and city planning commission filed an answer too late to join in the motion, but have authorized a statement that they join in seeking the relief asked by Lincoln.

Special Term relied on *Matter of Peters* v. *New York City Housing Auth.* (307 N. Y. 519), in deciding that the propounded issues of constitutionality should await the resolution of factual issues that might conclude the litigation. Of course, constitutional questions should not be decided before it is necessary to do so or when any alternative grounds of effective disposition present themselves (*Rescue Army* v. *Municipal Court,* 331 U. S. 549, 569; *Lynbrook Gardens* v. *Ullmann,* 291 N. Y. 472, certiorari denied 322 U. S. 742).

Plaintiff, however, is attacking the constitutionality of statutes whose substance or counterparts have been held to be constitutional before. Because of prior adjudication bearing on the validity and constitutionality of the statutes involved here the questions freshly raised by this motion can be answered readily. The mere assertion of a constitutional question does not warrant postponing its determination when the governing principles have been enunciated time and again in analogous situations. When such a decision will not tend to break new ground, but rather to follow the leaders, there appears to be no point in first trying out an immaterial issue.

The question of fact allegedly requiring priority in determination relates to whether the governmental bodies in approving Lincoln's application acted in the interest of defendant Lincoln

alone or in the interest of the public. In *Matter of City of New York (Ely Ave.)* (217 N. Y. 45, 59), the court stated that it would not "impute to the legislature or the discretionary action of municipal bodies clothed with legislative powers other than public motives for their acts; that the presumption that legislative action has been devised and adopted on adequate information and under the influence of correct motives will be applied to the discretionary action of municipal bodies and will preclude all collateral attack (*McCabe* v. *City of New York*, 213 N. Y. 468), and this rule has long been established by decisions of this court."

Plaintiff made no effort to combat the presumption thus raised. Although plaintiff opposed the granting of a garage permit to Lincoln vigorously and at great length before the planning commission, the board of estimate and at Special Term, it has not hitherto asserted that the board of estimate's approval constituted special legislation for the benefit of Lincoln alone. The record is barren of any facts in support of such a claim. To the contrary, the record indicates the planning commission and the board gave careful and intelligent consideration to the urgent need for off-street parking facilities in the area of the proposed garage site. Six large department stores within three blocks of the location, and Manhattan Centre, which is a large public hall, and the Hotel New Yorker, both on the same block, expressed approval. So did four associations representing local business interests. Proof positive was presented to the effect that available off-street, transient parking facilities in the area are grossly inadequate.

Section 21-A of the zoning law, as it now reads, if it is constitutional, must govern the disposition of this case. In *Boardwalk & Seashore Corp.* v. *Murdock* (286 N. Y. 494), the zoning resolution was amended while the case was on appeal. The court held the law as amended had to be followed, although it dictated an affirmance where otherwise a reversal would have been required.

Plaintiff attacks the amendment to section 21-A on the ground that it is so irrational in its terms and operation that it bears no substantial relation to the public health, morals, safety and welfare. "Upon parties who attack an ordinance * * * rests the burden of showing that the regulation assailed is not justified under the police power of the state by any reasonable interpretation of the facts." (*Shepard* v. *Village of Skaneateles,* 300 N. Y. 115, 118.)

In approving and recommending the amendment to section 21-A the planning commission was evidently moved by many of the same considerations, viewed however against the overall

city experience, as had prompted approval of the Lincoln application a few months earlier. Hearings were held at which opponents and proponents of the announced proposal were heard, six months of painstaking study was had, and as a result, the commission made the finding that there was insufficient city-wide provision for off-street accommodation of motor vehicles. The amendment was designed to liberalize section 21-A since " attempts to provide off-street accommodations are negated to a very considerable extent by the accumulated highly restrictive regulations of Section 21-A as it now exists " (Report of City Planning Comm. to Bd. of Estimate). In fact, the commission was giving serious consideration to the revocation of section 21-A entirely, due to the anomalous situations it bred.

In the light of the record the amendment was a reasonable legislative act, immune from plaintiff's attack (*Nappi* v. *La Guardia,* 184 Misc. 775, 783, 784, affd. without opinion 295 N. Y. 652; *McCabe* v. *City of New York,* 281 N. Y. 349, 353; *Village of Euclid* v. *Ambler Co.,* 272 U. S. 365, 388).

Plaintiff also charges that the amendment was " tailor-made " to suit the appellant and was designed to overcome the fatal weaknesses in the approval of his application under the original section 21-A. The hearings before the planning commission and the board of estimate indicate clearly that the amendment was intended to be city-wide in scope and of general applicability. It was evidently enacted after careful consideration and study of its effect upon thousands of schools and hospitals as contrasted with its effect upon a critical city-wide off-street parking problem. Such balancing of relative harm, benefit and convenience is peculiarly a legislative function.

In *Rodgers* v. *Village of Tarrytown* (302 N. Y. 115, 124), a charge of illegal " spot zoning " for the benefit of one owner and the detriment of other owners was dismissed as without substance. It was said that the relevant inquiry is " whether it was accomplished for the benefit of individual owners rather than pursuant to a comprehensive plan for the general welfare of the community ". (See, also, *Nappi* v. *La Guardia, supra,* pp. 780-781.)

*Freeman* v. *City of Yonkers* (205 Misc. 947), relied on by plaintiff and cited by Special Term, affords little comfort to plaintiff. In that case, upon ample evidence, the court found that the ordinance under attack constituted special legislation to change the zone classification of a single lot.

There remains plaintiff's contention that section 21-F of the zoning resolution purports to confer on the planning commission

the power to grant " variances "; and to that extent that the section is void. It argues that the basic function of the commission is to prepare the zoning map of the city and to revise it from time to time; while the power to vary the application of the zoning resolution in a specific case is reposed in the board of standards and appeals.

Under subdivision 5 of section 666 of the New York City Charter the board is given the power to " determine and vary the application of the building zone resolution as may be provided in such resolution." If it determines " that there existed unnecessary hardships in the way of carrying out the strict letter of the provisions of the zone resolution and that substantial justice would be promoted both to the property owners and the public interest " (*People ex rel. Sheldon* v. *Board of Appeals*, 234 N. Y. 484, 495) it may modify or vary the application of the regulations, in harmony with their general purposes.

It may well be that by allowing a variance the board could have given Lincoln the relief it sought in its application to the commission. It does not follow that in the legislative zoning scheme such power precluded change in the applicable zoning resolution by reason of which substantially similar results would be obtained.

Section 21-F was adopted in 1949, and modified to its present form in 1950, pursuant to section 200 of the charter. The pertinent portions of the latter section read as follows: " Any existing resolution * * * to regulate and restrict * * * the location of buildings designed for specific uses * * * *including any such regulation which provides that the board of standards and appeals may determine and vary the application of such resolutions* * * * may be amended, repealed or added to only in the following manner:" (emphasis supplied). (Then follow the technical provisions for notice, hearing and enactment.)

The power lodged in the board of standards and appeals to grant variances stems in the first instance from the board of estimate, which was authorized by the Legislature to so provide by regulations (L. 1917, ch. 601).

The city planning commission's report to the board of estimate (dated July 13, 1949) stressed the intolerable condition of traffic congestion and the urgent need to stimulate construction of adequate garage and parking facilities. This evidently could not be accomplished by the piecemeal procedure for the granting of variances, but required a general resolution of uniform city-

wide application. Such a resolution would not be inconsistent with the variance granting function of the board.

This is indicated by the following excerpt from the above-mentioned report: '' The relationship between the Board of Estimate, City Planning Commission and the Board of Standards and Appeals and their jurisdiction remains unchanged. At present, if a zoning change is approved by the Planning Commission, it goes to the Board of Estimate as required in Section 200 of the Charter. If a zoning change be disapproved by the City Planning Commission, the unsuccessful applicant may seek relief from the Board of Standards and Appeals under either Section 21 (the hardship section) or any of the subdivisions under Section 7. Under the proposed amendment, an applicant may apply to the Board of Standards and Appeals for a variance under Section 21 of the Zoning Resolution, on the grounds of unnecessary hardship. The applicant may also apply to the City Planning Commission for a site approval. Should the Planning Commission refuse to grant a site approval, the unsuccessful applicant would have the right to seek relief from the Board of Standards and Appeals as set forth in Sections 21 and 7 of the Zoning Resolution. From any action of the Board of Standards and Appeals an aggrieved party has a right of appeal by way of certiorari to the Supreme Court. An unsuccessful applicant for a site approval under the proposed Section 21-F may thereafter seek relief from the Board of Standards and Appeals, but such action is not construed as an appeal from the decision of the City Planning Commission. The jurisdiction of the Board of Standards and Appeals to vary the terms of the Zoning Resolution as provided in Section 21 thereof will remain unchanged. The right of the applicant thereafter to initiate a proceeding before the Board of Standards and Appeals under the Zoning Resolution remains unimpaired.''

The zoning function is not confined to mere map making. When, as here, the resolution provides for relief that is general and uniform in scope and applicability, the governmental unit administering such resolution is performing a zoning function (*Green Point Sav. Bank* v. *Board of Zoning Appeals*, 281 N. Y. 534).

This sort of zoning provision — enactment of a general resolution, withholding blanket approval beforehand, and requiring subsequent separate authorization for specific uses — has been sustained by the courts as a valid exercise of the legislative zoning power rather than the grant of a variance (*Rodgers* v. *Village of Tarrytown*, 302 N. Y. 115, 122, *supra*; *Green Point*

*Sav. Bank* v. *Board of Zoning Appeals, supra,* p. 539; *Nappi* v. *La Guardia, supra,* p. 781). As has been noted, in each instance the approving resolution of the planning commission must be further approved by the board of estimate.

Since sections 21-A and 21-F of the zoning resolution are valid and constitutional both as enacted and as they bear upon the facts in this case, and since such a holding leaves no issue of fact to be determined, the order appealed from should be reversed and summary judgment granted dismissing the complaint.

PECK, P. J., CALLAHAN, BASTOW and RABIN, JJ., concur.

Order unanimously reversed, with $20 costs and disbursements to the appellant, the motion granted, and judgment is directed to be entered in favor of the defendant dismissing the complaint herein, with costs.