JACKSON AND PERKINS COMPANY, Respondent, *v.* CONSTANTINE B. MARTIN et al., Appellants.

Fourth Department, February 22, 1962.

*Richard C. Mitchell* for appellants.

*Nixon, Hargrave, Devans & Dey* (*T. Carl Nixon* and *Frederick W. McNabb, Jr.,* of counsel), for respondent.

*Francis D. McCurn* and *Avery B. Robinson* for Village of Newark, *amicus curiæ.*

2

BASTOW, J. The parties to this action own contiguous parcels of land in the Village of Newark both located in a residential A district under the provisions of a Zoning Ordinance originally enacted in 1931. Plaintiff owns some 58 acres and for many years has used the land for the raising and marketing of horticultural and nursery products. The perimeter of plaintiff's lands is in excess of 8,000 feet and the westerly line thereof adjoins defendants' easterly line for a distance of 330 feet. The latter own some 16 acres and in 1958 defendants began to permit trailers used as dwellings to be located on their lands.

The judgment herein mandates defendants to remove all trailers from their property and permanently restrains them from maintaining trailers as dwellings thereon. Defendants, however, by a further judgment provision are given the right to elect to be relieved from such injunction provisions by the payment to plaintiff of $41,000 which is stated to represent the depreciation in the value of plaintiff's property.

The 1931 Zoning Ordinance made no specific provision for trailers, presumably, as we may judicially note, because they were practically unknown at that time as a dwelling abode. (Cf. *New York Mobile Homes* v. *Steckel,* 9 N Y 2d 533; "Regulation of Mobile Homes", 13 Syracuse L. Rev. 125.) The trial court found that house trailers would not comply with certain provisions of the ordinance because, for instance, they were not set on a masonry foundation with adequate cellar under the same with at least two windows opening to the outside therefrom or they did not occupy more than 25% of the lot area.

The 1931 ordinance was adopted apparently pursuant to the provisions of article 6-A of the Village Law. (L. 1923, ch. 564, as amd.) Section 175 thereof contains a broad grant of power to village trustees to regulate and restrict by ordinance " For the purpose of promoting the health, safety, morals, or the general welfare of the community  *   *   *   the location and use of buildings, structures and land for trade, industry, residence or other purposes." In 1955 the Legislature added subdivision 69 to section 89 of the Village Law. (L. 1955, ch. 227.) This empowered boards of trustees to regulate house trailer camps and to regulate the locating of trailers when used or occupied as living quarters outside of an established trailer camp. (See, also, Village Law, § 89, subd. 52.)

In 1958 the Village Board attempted to enact an ordinance regulating trailers and trailer parks. It is conceded that the enactment was not valid by reason of defects in publishing and posting following adoption. We are here concerned with the second ordinance enacted in January, 1960. The trial court

found this invalid because it (1) was in conflict with the 1931 ordinance; (2) bore no relation to the health, safety, morals or general welfare of the residents of the village and (3) was " spot zoning."

We digress to consider the conditions that confronted the trustees at the time the 1960 ordinance was adopted. The proof discloses that there were 77 trailers in the village then being used as dwellings. Forty-one trailers were located in six trailer camps. Four camps with 36 trailers therein were in a residental district and two camps with five trailers were outside any zoned area. There were 36 individual trailers located in the village with 29 in a residential A district, one in a residential B district, one in a commercial A district, four in a light industrial district and one outside any zoned area.

Turning to the 1960 ordinance we find that it begins with a statement of purpose, that is, to promote the health, safety, morals and general welfare of the village by regulating " the physical characteristics and development of a trailer park." Section 1 prohibits the " parking " or " storage " of trailers, as defined therein, except in public garages or in the open within 20 feet of the rear lot line and 4 feet from any occupied side lot line and mandates that the trailer shall not be used, the doors thereof must be locked and the trailer must be disconnected from all utilities. Existing trailers parked in violation of these provisions may remain on their present sites as long as they continue to be occupied by the present occupants or their transferees.

Section 2 of the ordinance relates to trailer parks. No one may operate a park without securing a license from the Local Building Inspector. The various subdivisions define a " trailer park ", establish a setback line, prescribe the distance apart trailers shall be on their sites, demand conformity with village regulations for water and sewerage, require separate parking facilities for cars, ban additions to the trailers and the accumulation of rubbish, establish certain requirements for grading and position of streets within the park, direct compliance with the regulations of the local utility company, the building regulation forms and the payment of a license fee. Next, the section prohibits all trailer parks and camps within the village except for existing ones and those previously authorized by the Village Board. As to those, it is required that a plan with specified details be approved by the board and the State Health Department before construction may be started or operation continued. Lastly, the section states that insofar as the provisions thereof controvert or conflict with existing provisions

of the Zoning Ordinance the former shall govern and supersede all provisions of that ordinance or other village ordinances.

We conclude that the 1960 ordinance was adopted in conformity with a comprehensive plan and did not constitute "spot zoning." On the first phase it has been written that the "comprehensive plan, with which the amendment must conform, is many things to many courts. It may be the basic zoning ordinance itself, or the generalized 'policy' of the local legislative or planning authorities in respect to their city's development — or it may be nothing more than a general feeling of fairness and rationality. Its identity is not fixed with any precision, and no one can point with confidence to any particular set of factors, or any document, and say that there is the general plan to which the zoning enabling act demands fidelity." (Haar, "In Accordance With a Comprehensive Plan", 68 Harv. L. Rev., 1154, 1167.)

The subject of "spot zoning" was considered in *Rodgers* v. *Village of Tarrytown* (302 N. Y. 115, 123–124) where it was defined "as the process of singling out a small parcel of land for a use classification totally different from that of the surrounding area, for the benefit of the owner of such property and to the detriment of other owners [citing cases], 'spot zoning' is the very antithesis of planned zoning. If, therefore, an ordinance is enacted in accordance with a comprehensive zoning plan, it is not 'spot zoning', even though it (1) singles out and affects but one small plot * * * or (2) creates in the center of a large zone small areas or districts devoted to a different use. * * * Thus, the relevant inquiry is not whether the particular zoning under attack consists of areas fixed within larger areas of different use, but whether it was accomplished for the benefit of individual owners rather than pursuant to a comprehensive plan for the general welfare of the community."

Turning again to the facts in this case it appears that at various unproven times during the period of some 30 years of the life of the original Zoning Ordinance 65 trailers had been located in a residential A district — 36 in four trailer parks and 29 in individual locations. In addition six were located in residential B, commercial or light industrial districts. It may be surmised, although it does not appear in the record, that when the basic ordinance was enacted in 1930 much of the land in the village was overzoned. Thus the 58 acres owned by plaintiff, although located in a residential A district, have been used, as found by the trial court, since 1941 for the raising and marketing of nursery products and the conducting of a business thereon pursuant to an exception in the ordinance.

The buildings thereon include a garage, a packing shed and storage building. In the Summer months some 50 people are employed in these operations. It is significant that no proof was offered to show that any of the 71 trailers in residential districts were actually located in what might be called a first-class residential area.

We thus approach the situation that confronted the Village Board when the ordinances of 1958 and 1960 were adopted. It may be true that trailers were scattered all over the village. It also may be correct that these lacked cellars with two windows therein as required for a "dwelling" under the provisions of the 1930 ordinance. In any event there is no proof that any action had been taken against these violators during the years the trailers had been accumulating in the village. Faced with this situation the Village Board adopted an ordinance that was plainly an amendment to the basic zoning ordinance as well as the exercise of the licensing power granted by subdivision 69 of section 89 of the Village Law. This represented a specific policy and comprehensive plan in respect to trailer parks and individual trailers.

As to the latter the ordinance prohibited the use thereof as dwellings. Those now in existence will be eliminated by the passage of time as existing individual trailers may only continue as long as occupied by the present occupants or their transferees. The remainder of the ordinance deals with trailer parks. Some of these had been licensed under the 1958 ordinance but only four, including defendants', existed in a zoned area. These had been licensed or were in existence in 1960 and could only continue by complying with the stated requirements of the enactment. These portions of the ordinance were apparently enacted pursuant to subdivisions 52 and 69 of section 89 of the Village Law. (Cf. "Regulation of Mobile Homes," 13 Syracuse L. Rev. 125, 135, *supra*.)

In the latter article it is pointed out (p. 125) that "some municipalities have responded to the social and economic problems incident to the use of mobile homes by using their regulatory powers in a manner both intolerant and hostile" or "have sought to confine trailer living to 'ghettos' in areas unfit for residential use." Here, the legislative body of the municipality has avoided such an approach. The result may not be perfect or meet with the approval of all the village residents. But "this zoning being a legislative act (not a variance) is entitled to the strongest possible presumption of validity and must stand if there was any factual basis therefor." (*Church* v. *Town of Islip*, 8 N Y 2d 254, 258.) Upon plaintiff "rests the burden

of showing that the regulation assailed is not justified under the police power of the state by any reasonable interpretation of the facts." (*Shepard* v. *Village of Skaneateles,* 300 N. Y. 115, 118.) This it has failed to do.

Considered as a whole the 1960 enactment, as heretofore stated, in substance "froze" individual trailers and trailer parks in their existing condition as of the date of the ordinance. The former may not be located anew in the village and used as dwellings. Trailer parks will be limited to six in number in their present locations. Presumably, the Village Board recognized that "since trailers and trailer parks are not nuisances *per se,* nor inherently detrimental to the public health and welfare, an ordinance which forbids their location within a [municipality] is not justifiable as an exercise of the police power." (13 Syracuse L. Rev., *supra,* pp. 125, 132 and cases therein cited.) In any event no plaint is here made that the regulation is arbitrary or unreasonable in thus limiting the number of trailer parks. (Cf. Ann. 22 A. L. R. 2d 774, 782.) We find nothing in this record to justify a finding that the method adopted of establishing trailer parks constituted "spot zoning." To the contrary there is no evidence as to the nature of the surroundings of the other five parks. The complaint of respondent is that they are "scattered all over" the village but this is insufficient to invalidate the ordinance. It is recognized "that zoning cannot be used as a cloak for arbitrary and capricious action by the officers entrusted with the operation of the statute" but courts may not "inquire into the motives of the [local legislative body], nor go behind the duly enacted legislation of the [body] in an attempt to seek a wrongful motive." (FROESSEL, J., *Nappi* v. *La Guardia,* 184 Misc. 775, 780, affd. 269 App. Div. 693, affd. 295 N. Y. 652.)

We conclude that the enactment represents a comprehensive plan and does not constitute "spot zoning". Neither is the hardship imposed upon plaintiff so severe that the ordinance must be invalidated. It is plain that plaintiff's real grievance is an earlier disagreement between the parties as to the joint development of their properties. The strange provision in the judgment that defendants may continue to conduct a trailer park in violation of an ordinance found to be absolutely and totally invalid upon the payment to plaintiff of $41,000 is difficult to understand. Defendants raise serious questions as to the standing of plaintiff to obtain such financial remuneration. In view of our conclusion as to the validity of the ordinance it is unnecessary to explore this issue.

The judgment should be reversed and the complaint dismissed.

HALPERN, J. (dissenting in part). I agree that the portion of the judgment awarding money damages as alternative relief should be stricken, but in all other respects I would affirm the judgment, granting an injunction against the defendants' operation of a trailer camp on their premises.

It is undisputed that the establishment of the trailer camp by the defendants in 1958 was a violation of the Zoning Ordinance of 1931 then in force. The operation of a trailer camp is a business or commercial use which is not permissible in a residential zone (*City of New Orleans* v. *Louviere*, 52 So. 2d, 751 [La.]; *City of New Orleans* v. *Lafon*, 61 So. 2d 270 [La.]; *Grange* v. *Korff*, 248 Iowa 118, 124; 1 Rathkopf, Law of Zoning and Planning [3d ed.], p. 17–11).

Although the use was illegal in its inception, it is claimed that it was legalized by the adoption on January 14, 1960, of a so-called Trailer Ordinance. This ordinance, *inter alia*, (1) imposed various regulatory restrictions upon trailers and trailer camps, (2) authorized the continued operation of all existing trailer camps (including those which were then in the process of establishment), and (3) forbade the establishment of any new trailer camps anywhere in the village in the future. The Trailer Ordinance did not purport to amend any specific section of the Zoning Ordinance but, at the end, in sweeping general terms, it provided that "[i]nsofar as the provisions of the above paragraphs contravene or conflict with the existing provisions of the Zoning Ordinance * * * the provisions of said paragraphs shall govern and supersede any and all provisions of said Zoning Ordinance". It is the validity of this provision which is in question here. The first part of the Trailer Ordinance, regulating trailers and trailer camps generally, was properly adopted in the exercise of the powers conferred upon the Village Board by subdivision 69 of section 89 of the Village Law, insofar as the location of the trailers and trailer camps referred to did not conflict with any provision of the Zoning Ordinance. However, the penultimate paragraph of the ordinance quoted above purported to be an exercise of the power of the Village Board to adopt and amend zoning regulations under sections 175 to 179 of the Village Law, and its validity must rest upon a showing of compliance with those sections.

It is questionable whether the catch-all provision in the Trailer Ordinance was, in form, a permissible method of amending the Zoning Ordinance, but apart from that point, the purported amendment of the Zoning Ordinance was, in my opinion, invalid for several reasons. Many of the points made below

are applicable to the provisions with respect to individual trailers as well as to those with respect to trailer camps, but I shall address myself only to the portion of the amendment dealing with trailer camps, since that is the use which is in direct controversy here.

(1) The amendment violated the provisions of section 176 of the Village Law which requires all use regulations to be uniform throughout each zoning district. The purported amendment did not change the list of permissible uses enumerated in the Zoning Ordinance for the residential district. (Of course, the commercial enterprise of operating a trailer camp is not one of the enumerated permissible uses.) The amendment did not draw new district lines, or set up a new type of district in which trailer camps or similar uses would be permissible. It is stated in the majority opinion that it may be " surmised " that part of the residential district was found to have been " overzoned ". If this was true, the village authorities had the right to rezone a part of the district and place it in a new classification in which all property owners alike would have the right to operate trailer camps. This the Village Board did not do. Neither did the Village Board adopt a uniform rule applicable alike to all premises within the residential district, allowing all property owners to apply for a permit to operate a trailer camp upon terms of equality. (*Rodgers* v. *Village of Tarrytown,* 302 N. Y. 115; *Nappi* v. *La Guardia,* 184 Misc. 775, affd. 269 App. Div. 693, affd. 295 N. Y. 652.)

The amendment did not rezone the area in which the defendants' premises were located and take them out of the residential district. The premises remained in the residential district, subject to the restricted uses specified for that district. In the face of these unchanged regulations, the amendment purported to authorize the defendants to maintain a trailer camp, contrary to the use regulations which were binding upon the other property owners in the district. This flouted the command of the statute that use regulations " shall be uniform * * * throughout each district ". (Village Law, § 176; *Callanan Rd. Improvement Co.* v. *Town of Newburgh,* 6 Misc 2d 1071, affd. 5 A D 2d 1003.)

(2) The amendment was not " made in accordance with a comprehensive plan " (Village Law, § 177), but constituted illegal spot-zoning. It is a flagrant example of a zoning ordinance amendment not designed to alter the zoning regulations to serve the general welfare, but designed to give a special advantage to one property owner " for the benefit of the owner of such property and to the detriment of other owners ". (*Rodgers*

v. *Village of Tarrytown, supra,* p 123.) The amendment, in effect, selected the premises of the defendants and three other owners of trailer camps, scattered throughout the residential district of the village, and, without any rhyme or reason, gave them the exclusive right to operate trailer camps in perpetuity, without regard to any comprehensive zoning plan. The comprehensive zoning plan reflected in the Zoning Ordinance excluded all commercial uses, including trailer camps, from the residential district. The amendment completely departed from this plan but it did not substitute any other perceptible plan. It authorized the use of the particular sites for trailer camp use in the residential district, simply because they happened to have been so used (illegally) in the past.

The operation of a trailer camp on the premises of the defendants, adjacent to the plaintiff's premises, was highly detrimental to the use of the plaintiff's premises for residential purposes, particularly in view of the plaintiff's intention to use its premises for a new subdivision development. However, if, in view of the authority given to the defendants to operate a trailer camp, the plaintiff should decide to abandon its subdivision plan and to use its property as a site for a trailer camp, similar to the defendants', the plaintiff would be prevented from doing so by the terms of the amendment. The owners of all property other than existing trailer camp sites were denied the right to operate trailer camps, without regard to their location in proximity to the existing camps and without regard to their suitability for that use. The ordinance thus arbitrarily discriminated between the defendants' premises and the premises of the plaintiff and of others in the vicinity, although all the premises were similarly situated.

The fact that the sites selected for the special privilege were already devoted to trailer camp use does not justify the discrimination. On the contrary, it aggravates the wrongfulness of the spot-zoning. The trailer camps in existence at the time of the adoption of the amendment had been established illegally in violation of the Zoning Ordinance. It was the duty of the village authorities to enforce the ordinance and to compel the trailer camp operators to cease the illegal operation. Instead, the village authorities rewarded the illegal users by making them the recipients of a special privilege.

This is not a case of authorizing the continuance of a lawful nonconforming use which was in existence prior to the adoption of the Zoning Ordinance; it is rather the case of an unlawful use, illegal from its inception, which was sought to be legalized by spot-zoning in favor of the wrongdoers.

(3) The purported amendment to the Zoning Ordinance is arbitrary and discriminatory in forbidding the establishment of trailer camps in the future in the commercial and industrial districts of the village. Not only does the amendment discriminate in favor of the existing camp site owners as against all other property owners in the residential zone, but it also discriminates against property owners in the commercial and industrial zones by forbidding them to open trailer camps in the future, even though they would otherwise have had the right to do so under the Zoning Ordinance. Trailer camps are permissible uses in the nonresidential sections of the village under the terms of the Zoning Ordinance. (Zoning Ordinance, § 6.) Furthermore, it is provided in the Zoning Ordinance that any use permitted in a district of higher classification is permissible in a district of lower classification. (Zoning Ordinance, § 6, subd. 1; § 8, subd. 1.) The amendment turns the Zoning Ordinance classification upside down. It permits trailer camps in the residential district, the district of highest classification, and forbids them in districts of lower classification. This is wholly arbitrary. A Village Board may not, in the reasonable exercise of its zoning powers, permit trailer camps at haphazardly selected sites in a residential district and concurrently forbid them completely in the commercial and industrial districts of the village.

It is true that the prohibition of trailer camps in nonresidential districts does not directly affect the plaintiff, but is an integral, nonseverable part of a single legislative scheme reflected in the amendment, and if it is held to be invalid, as it must be, the whole amendment falls. (*Loew* v. *McNeill*, 170 Misc. 647, affd. 279 N. Y. 806; *Hauser* v. *North British & Mercantile Ins. Co.*, 206 N. Y. 455, 465; *People* v. *Harrison*, 170 App. Div. 802, affd. 219 N. Y. 562; McKinney's Cons. Laws of N. Y., Book 1, § 150, p. 241.)

(4) There were several lawful ways in which the Village Board could have dealt with trailer camps, but the board did not adopt any of them. First of all, the board could have enforced the Zoning Ordinance and compelled the removal of all trailer camps to the commercial or industrial district. Secondly, the board could have amended the list of permissible uses in the residential district and could have permitted trailer camps in any part of the district, as well as in the commercial and industrial districts, upon compliance with reasonable health and sanitation regulations. This the Village Board obviously did not wish to do. The board could have rezoned a part of the residential district and set up a new district of appropriate size in

accordance with a comprehensive plan, and it could have provided new use regulations for the new district, including trailer camps among the permissible uses. This, too, the board did not choose to do.

The method of dealing with trailer camps most commonly in use, and the one recommended by the New York State Department of Commerce, is to require a special zoning permit from the Zoning Board of Appeals before a trailer camp can be established in any part of the municipality (Zoning in New York State [1958], pp. 128–129). A similar provision is commonly made with regard to such special uses as gasoline stations and billboards. (Cf. *Matter of Concordia Collegiate Inst.* v. *Miller,* 301 N. Y. 189, 195.) This method of dealing with the problem has the merit of giving an opportunity to all persons whose properties are similarly situated to apply for a permit on terms of equality. It also has the merit of affording the parties the right of judicial review of the decisions of the Board of Appeals granting or denying special permits.

The Village Board did not choose any of these lawful methods of dealing with the problem; instead it dealt with it unlawfully by adopting a spot-zoning amendment in favor of the unlawful existing trailer camp sites within the residential zone.

There is no provision in the Trailer Ordinance for the obtaining of a special permit from the Zoning Board of Appeals as a condition of operating a trailer camp. There is a provision for the obtaining of an annual license for a trailer camp, but this is wholly different from a special zoning permit. The license relates only to matters of health and sanitation. The defendants and the other owners of trailer camp sites which were in existence at the time of the adoption of the Trailer Ordinance are not required by that ordinance to obtain any zoning permit in order to be authorized to operate in the residential zone. They are given that right without qualification and in perpetuity by the Trailer Ordinance itself. They are not required to make a showing of the suitability of the location of their camps or the absence of detriment to the neighbors as a condition of obtaining authority to continue to operate. Conversely, there is no provision in the Trailer Ordinance by which other property owners similarly situated are given the right to apply for a permit to establish a trailer camp in the future. The defendants and the other existing trailer camp owners are thus arbitrarily given a monopoly of trailer camps in the village.

For these reasons, I would hold that the purported amendment to the Zoning Ordinance was invalid and that the pre-existing provisions of the Zoning Ordinance remained in full force and

effect, and that the plaintiff is entitled to an injunction against the violation of the Zoning Ordinance by the defendants.

WILLIAMS, P. J., and MCCLUSKY, J., concur with BASTOW, J.; HALPERN, J., dissents in part, votes to modify the judgment and to affirm the judgment as modified, in separate opinion, in which HENRY, J., concurs.

Judgment reversed on the law and facts, with costs, and complaint dismissed, with costs.