Mario Pittoni, J.
The plaintiffs bring this action to declare a zoning ordinance of the Town of Hempstead dated May 7, 1957 invalid and unconstitutional. This ordinance rezoned a parcel of land from “ C-A Residence ”, under which are permitted “ multiple family dwellings, including the office, studio or occupational room of a professional person ” to the next classification, “ Business ”, under which are allowed single or multiple dwellings, clubs, hotels, certain institutions, certain specified business buildings, and certain other specified business buildings only upon special permission from the Town Board. The plaintiffs are all owners of one-family dwellings in the adjacent “ C-A Residence ” district.
This rezoned parcel is an irregular plot at the intersection of the easterly side of Fenwood Drive and the westerly side of Central Avenue, and is north of the Incorporated Village of Valley Stream. It is approximately 300 feet in width and 250 feet in depth, with a frontage of 258.48 feet on Fenwood Drive and a frontage of 297.50 feet on Central Avenue.
Zoning is a legislative function and a zoning or rezoning ordinance or an amendment thereto is presumed valid. The burden of proving the invalidity of a zoning ordinance or an amendment thereto is upon the party who assails its validity. The assailant must show by a fair preponderance of credible evidence that the zoning determination of the legislative body was arbitrary, capricious or unreasonable. If the validity of the legislative classification for zoning purposes is fairly debatable, the judgment of the legislative body is conclusive and beyond interference by the courts. (Village of Euclid v. Ambler Realty Co., 272 U. S. 365, 388; Rodgers v. Village of Tarrytown, 302 N. Y. 115,121; Shepard v. Village of Skaneateles, 300 N. Y. 115, 118; Green Point Sav. Bank v. Zoning Appeals Bd. of Town of Hempstead, 281 N. Y. 534, 538, 539.)
The nub of the plaintiffs’ argument in assailing the rezoning ordinance of May 7,1957 is point IV of their brief. They say: < ‘ The rezoning herein in a residential area of a single lot was ‘ spot zoning ’ not in conformity with any overall plan *776 of development and did not promote the health, safety, morals or general welfare of the community but was accomplished for the special benefit of the individual owners rather than pursuant to a comprehensive plan for the general welfare of the community and was therefore unconstitutional.”
What is “ spot zoning ”? It has been defined and described as follows: ‘' Defined as the process of singling out a small parcel of land for a use classification totally different from that of the surrounding area, for the benefit of the owner of such property and to the detriment of other owners * * * ‘ spot zoning ’ is the very antithesis of planned zoning. If, therefore, an ordinance is enacted in accordance with a comprehensive zoning plan, it is not ‘ spot zoning,’ even though it (1) singles out and affects but one small plot * * * or (2) creates in the center of a large zone small areas or districts devoted to a different use * * * business area in residence zone * * * Thus, the relevant inquiry is not whether the particular zoning under attack consists of areas fixed within larger areas of different use, but whether it was accomplished for the benefit of individual owners rather than pursuant to a comprehensive plan for the general welfare of the community.” (Rodgers v. Village of Tarrytown, supra, pp. 123-124.)
The expression “ spot zoning ” does not bear magical import. An ordinance is not to be labeled ‘ ‘ spot zoning ’ ’ merely because it singles out and affects one parcel of land. The true test is whether the change is part of a well-considered and comprehensive plan. (Shepard v. Village of Skaneateles, 300 N. Y. 115, supra; Greenberg v. City of New Rochelle, 206 Misc. 28.)
The court, at the suggestion and by stipulation of the attorneys for the parties, has viewed the subject parcel and area involved. However, for the purpose of this opinion it is better to take a panoramic view by the use of the large maps in evidence which show the residence districts, the apartment districts with apartments, the apartment districts with private residences, business districts, industry districts and public districts. The subject property has a frontage of 297.50 feet on Central Avenue and 258.48 feet on Fenwood Drive. Central Avenue is a well-traversed road which goes from Sunrise Highway, Valley Stream, and bears northwest through Valley Stream and Elmont and then under the Southern State Parkway, where it eventually joins and becomes Foch Boulevard. This boulevard which runs from the Queens County line to the Southern State Parkway is zoned for business. Elmont *777 Road which runs into Foch Boulevard is also zoned for business. Central Avenue as it runs through Valley Stream up to approximately 3,000 feet of the Parkway is also zoned for business. This leaves a strip on Central Avenue of approximately 3,500 feet within the subject area still zoned non-business. A large area fronting about 1,500 feet on the westerly side of Central Avenue within this nonbusiness zone is now zoned “ C-A”. The subject parcel forms the northern corner of this “ C-A ” district or zone. Within this “ C-A ” zone are found apartments and single-family dwellings. As stated previously, the plaintiffs have their single-family dwellings within this “ C-A ” zone. On the easterly side of Central Avenue, but also within this 3,500-foot strip, and approximately 1,100 feet north of the Central Avenue business zone and about 500 feet south of the subject property there is a small business zone which includes a Dan’s Supermarket. Within a mile of the subject property are four other business areas with supermarkets. One is further south on Central Avenue and three are north of and on the other side of Southern State Parkway.
This is the important question: Is the proposed rezoning of the subject property from “ C-A ” to “ Business ” in accordance with a comprehensive zoning plan? If it is, it is not spot zoning. The plaintiffs’ planning expert, Frederick H. Reuter, testified that the Town of Hempstead had a comprehensive plan for the zoning of property, but that the May 7, 1957 rezoning of the subject parcel from “C-A” to “Business ” was not in accordance with that or any other comprehensive plan. On the other hand, defendants’ expert, Hugh T. Pomeroy, testified that in his opinion the challenged rezoning was in accordance with a comprehensive plan and represented an appropriate use of the subject parcel in the developmental pattern of the neighborhood, considering, what he called, the needs of the residents for neighborhood shopping. The plaintiffs challenge this conclusion by drawing the attention of this court to the fact that on cross-examination Mr. Pomeroy stated that he had not considered until they were presented to him on cross-examination the following facts:
“1. That the Board of Education had registered with the Town Board its strenuous opposition to the proposed rezoning.
‘' 2. That many children of the tender ages of 5 years and up walked unescorted to and from the Alden Terrace School along the westerly sidewalk of Central Avenue across which 1,000 or more cars would daily go in and out of the parking lot on the subject lot.
*778 “ 3. That the local Parent and Teachers Association and the civic associations and community centers had filed their written opposition with the Town Board against the proposed rezoning.
‘' 4. That the written protest against the rezoning signed by 450 of the resident home owners was filed with the Town Board.
“ 5. That no one appeared before the Town Board in favor of the rezoning, except that the lawyer for the applicant and a representative of Food Fair, who submitted sketches of the proposed supermarket and parking lot.
“ 6. That the regulations of the Planning Commission of Nassau County prohibited direct automobile access into Central Avenue from properties along Central Avenue.”
This, however, did not shake the expert’s opinion and it is difficult to see how this should vary a conclusion that the rezoning of the subject property was part of a comprehensive plan or scheme. In this respect, Mr. Pomeroy’s testimony is most enlightening. He testified as follows:
“ The Witness : I could supplement that by saying that in view of all the circumstances and conditions, I consider it the most appropriate use of the subject parcel. I have taken into account the relation of the subject parcel to the developmental pattern of the rather distinct neighborhood of which it is a part. That neighborhood is the one that I referred to as that which I had examined in somewhat detail lying from Southern State Parkway down to the Village of Valley Stream so far as the jurisdiction of the Town of Hempstead is concerned, and developmentally pretty much so since there is some change of character in development of this newer area that is in the general vicinity of the subject property, and some of the older portions of the Village of Valley Stream south of the incinerator property, around which new residential property has been taking place recently since a time that I made a very detailed examination of the Village of Valley Stream in recommending a revised zoning ordinance for the Village.
“ To the west, the neighborhood is distinctly bounded by the Cross Island Parkway and the boundary of the City of New York.
“ On the east, also distinctly bounded, because Arkansas Drive, which runs from Central Avenue and parallels Southern State Parkway one lot depth distant from it, turns at right angles and runs down to a street along the Village boundary line with no openings from Arkansas Avenue through into *779 the territory on the other side. There is, therefore, a distinct, well bounded neighborhood that should be considered as a developmental unit.
“ Considering the needs of the people of that neighborhood for convenient shopping facilities, it is my opinion that the proposed development of the subject property is necessary.
“ The nearest business to the subject property lying within the neighborhood is a matter of several hundred feet from the subject property southeast along Central Court. A small business development closely ringed by residences at each end and to the rear is inadequately provided with automobile parking. There is no on-site parking. The service road known as Central Court is sufficiently appurtenant to the business there, functionally speaking, so that it virtually serves as off-street parking for the shopping center, but just by observation it would appear that the amount of parking would be at a ratio of less than one half to one as to the floor area of the business establishments; whereas in a neighborhood shopping center, while the amount of parking required depends in part on the density of the adjacent residential property that it serves, a ratio of three to four, three to four times the amount of parking area to floor area is regarded as necessary, I so regard it and the Westchester Department of Planning, of which I am director, so recommends in our advisory work in municipalities in the county.
‘ ‘ The next nearest business property is that that lies in a small shopping center at the Village line straddling the Village line about two-thirds of it within the Village of Valley Stream, about one-third in the unincorporated territory of the town lying between Hendrickson Avenue and Milford Lane. That is more adequately provided with parking but still not according to a desirable standard. Again, by eye and pacing, it would appear that the ratio is possibly one and a quarter or one and a half times to one.
“ The remainder of the business development on Central Avenue is of the strip variety, one block depth, that is of the old subdivision pattern, without sufficient depth to provide necessary automobile parking.
“ At one point the Village of Valley Stream had provided a parking lot, but in the main that strip business is not capable of development to serve the retail needs of a residential neighborhood and that appears to be evidenced in part by the fact that the only use that is being made of some of it is to build residences on it.
*780 “ To the north, outside the neighborhood it is possible to reach shopping facilities by passing under Southern State Parkway into a rather miscellaneous type of business district along Foch Boulevard which is partly provided with off-street parking, but continuing on up Elmont Road, again there is inadequate automobile parking until a considerable distance, which I suppose is nearly a mile and a half from the subjéct property, where there is a designed shopping center with more adequate parking built contiguous to a school and across the street from another school.
“ Then at a similar distance there is a shopping center which in the newer part of it, at least, is quite adequately provided with automobile parking and rather generally so for the remainder of it on Dutch Broadway.
“ In other words, the need of the residents of this area for the convenient day-to-day shopping facilities is not properly met by business in the vicinity. In my opinion the development of the subject property for that type of business would serve the convenient needs of that residential neighborhood.”
The plaintiffs also attack Mr. Pomeroy’s testimony by using his testimony in the case of Huntley Estates v. Town of Eastchest er (283 App. Div. 1090). There he expressed the opinion that in that particular area “ rezoning for other than one-family residential use would in my opinion be contrary to a sound and comprehensive zoning plan in the Town.” There is nothing to show the similarity between the area in issue in this case and that in the Huntley Estates case.
The plaintiffs further claim that the construction of a large shopping center on the subject property will create a traffic hazard. But traffic problems are within the domain of the police and not zoning authorities. (Huntley Estates v. Town of Eastchester, 121 N. Y. S. 2d 504, 508; Matter of Brooklyn Parking Corp. v. Cannella, 193 Misc. 811; Matter of Property Owners Assn. v. Board of Zoning Appeals of Inc. Vil. of Garden City. 2 Misc 2d 309; Plander v. Koehler, 150 N. Y. S. 2d 879, 882; Downey v. Incorporated Vil. of Ardsley, 152 N. Y. S. 2d 195, 200.)
The plaintiffs cite and then quote from the opinion of Mr. Justice Christ in Santmyers v. Town of Oyster Bay (N. Y. L. J., July 19, 1957, p. 6, col. 1) but fail to quote another part of the opinion where Mr. Justice Christ says: “ This is to be distinguished from the establishment of shopping areas or centers where, even though not of great extent in area, there is an aggregate of business to supply the reasonable day to day needs of a community — foods and drugs, clothes, hard *781 ware, automobile supplies, and the like. Such a center is a long cry from setting aside one corner in a residential section for a gasoline service station, or a bowling alley, or undertaker’s parlor.”
The attempt to elicit from councilman Steinbrenner any evidence of his motives or the motives of the rest of the Town Board runs afoul of the rule that an amendment to a zoning ordinance is a legislative act and that the courts may not inquire into the motives of the board nor go behind the duly enacted legislation of the board in an attempt to seek a wrongful motive. (Nappi v. La Guardia, 184 Misc. 775, affd. 269 App. Div. 693, affd. 295 N. Y. 652.)
Then, too, the attempt to show by councilman Steinbrenner’s testimony that conditions were imposed for the May 7, 1957 ordinance runs afoul of the record itself. This is an ordinance that was passed — not a contract between the Town of Hemp-stead and the owners of the subject property. A reading of the documents involved, that is, the board’s rezoning resolution of May 7, 1957, the declaration of restrictions signed by the owners of the subject property, Louis and Eva Rothenberg, on May 7, 1957, and the Town Board’s resolution of May 14, 1957 accepting the declaration, clearly shows that no condition was imposed as consideration for the passage of the zoning resolution of May 7, 1957. Be that as it may, a reading of the declaration shows that the owners obligated themselves to maintain a chain link fence along the south and west lines of their premises and to permit no ingress or egress to or from Fenwood Drive. It is difficult to imagine that this type of restriction could be a condition for rezoning legislation. On the face, this declaration appears to be a voluntary agreement by the owners for the benefit of the nearby residents and an attempt to maintain the good will of the Town Board and of the residents.
The plaintiffs claim that the erection of a shopping center on the subject parcel would adversely affect the desirability and value of their homes. They produced as a witness William Schreiber, a licensed real estate broker with some experience in the Flm ont area. He testified that in his opinion a shopping center on the subject property would have an adverse effect on the plaintiffs’ properties. He also said that the further the properties from the subject parcel the less would be the adverse effect. To counteract this testimony, the defendants produced Gabriel C. De Costerd, a licensed real estate broker with experience in the Elmont-Valley Stream area. He testified that there would be no adverse effect on the value of *782 the plaintiffs’ properties by the proximity of the proposed shopping center. It cannot be said that the testimony of the plaintiffs’ expert, William Schreiber, has overcome that of the defendants’ expert, Mr. De Costerd; therefore, the plaintiffs have not sustained their burden of proof on this issue. In other words, the plaintiffs have not established by a preponderance of evidence that they will suffer property detriment by reason of the rezoning. Be that as it may, if the rezoning was part of a comprehensive plan or scheme for the good of the area involved, that is, the area bounded on the north by the Southern State Parkway, on the west by the Cross Island Parkway and the New York City line, on the south by the Incorporated Village of Valley Stream, and on the east by Arkansas Drive, ‘ ‘ A possible depreciation in value [of the plaintiff’s parcels near the subject property] is not of too great significance, for the pecuniary profits of an individual are secondary to the public welfare ” (Shepard v. Village of Skaneateles, 300 N. Y. 115, 120, supra); and “ While hardships may be imposed on this or that owner, ‘ cardinal is the principle that what is best for the body politic in the long run must prevail over the interests of particular individuals ’ ’ ’ (Rodgers v. Village of Tarrytown, 302 N. Y. 115, 126, supra).
Now, let us restate the basic principles of review by this court of the zoning ordinance involved herein. Zoning and rezoning are legislative functions by the Town Board, and are presumed valid until such zoning ordinances are found to be arbitrary, capricious or unreasonable. In such case they are unconstitutional. The burden of proving the invalidity of a zoning ordinance is upon the party who assails its validity. The assailant must show by a fair preponderance of credible evidence that the zoning determination of the legislative body was arbitrary, capricious or unreasonable. If the legislative classification for zoning purposes is fairly debatable, the judgment of the legislative body- is conclusive and beyond interference by the courts.
In this case the plaintiffs have failed to sustain by a preponderance of evidence their contention that the rezoning of the subject property was arbitrary or unreasonable or that it constituted “ spot zoning”. They have failed, therefore, to show that the ordinance of May 7, 1957 was invalid and unconstitutional. The complaint is therefore dismissed.
This constitutes the decision of the court in accordance with the provisions of section 440 of the Civil Practice Act.
Submit judgment on notice.