Mario Pittoni, J.
The plaintiffs request a judgment declaring certain Zoning Ordinance amendments, enacted by the Town Board in 1953 and 1957, unconstitutional and invalid. Their major claims are that the 1957 amendment is illegal spot zoning, that both the 1953 and 1957 amendments were zoning by contract and, therefore, void, and that they are adversely affected and entitled to sue.
The area involved is the Lido Beach-Point Lookout area at the east end of the island of Long Beach. It extends easterly from the Long Beach city line for a distance of approximately three miles to Jones Inlet, has an average width of approximately one-half mile, and is bounded on the south by the Atlantic Ocean and on the north by Reynolds Channel. It is approximately bisected by Lido Boulevard, the only thoroughfare which runs east and west on this end of the island.
At the westerly end of this area is the section known as Lido Colony which extends eastward from the Long Beach city line. Adjoining this, and further east, is the Lido Beach section. These two sections contained approximately 430 homes at the time that this action was begun on October 28, 1957. At the opposite or easterly tip of this area is the Point Lookout section which had approximately 700 one-family residences.
Between the Lido residential section and the Point Lookout section is an area consisting of several miles of predominantly open land. Herein are found six large beach and cabana clubs, a United States Nike Base, and the large Hempstead Town Park with its extensive bathing beaches, play areas, bathhouses and cabanas. Nearly in the center of this large area, but north of Lido Boulevard, is the Channels Home Development, consisting of approximately 12 residences; and also nearly in the center of this area, but approximately 550 feet away from the Channels Home Development and south of Lido Boulevard, is the property now involved in this litigation.
The subject property is just south of Lido Boulevard. Its northerly side measures approximately 385 feet longitudinally; its westerly boundary runs south 1,525 feet; its southerly side *759 at the high-water mark approximates 375 feet; and its easterly-boundary is about 1,578 feet.
In 1952 some property owners, including the then owner of the subject property, petitioned the Town Board to rezone their properties from “ Residence B ” to “ Business ”. At that time “Business ” permitted two-family and multiple family dwellings. Sometime prior to June 23, 1953 the Syljoan Corporation a predecessor of the defendant Nassau Beach Club, made a declaration of restrictions which was accepted by the Town Board and thereafter, on June 30, 1953, recorded in the Nassau County Clerk’s Office. On June 23, 1953, the Town Board rezoned the area from “Residence B” and “Business” to “Business” only, and did this unconditionally and without reference to the declaration. Under this amendment, beside other business uses, multiple dwellings were also permitted.'
Thereafter, in due course, the Syljoan Corporation conveyed the present property to the defendant Nassau Beach Club. This club then applied to the Town Board for a special exception to the Building Zone Ordinance to permit it to build a private beach cabana club. As a condition for the exception which it granted, the Town Board required the defendant Nassau Beach Club to execute and deliver a declaration of additional restrictions, which the Beach Club did on September 15, 1953. However, the defendant Nassau Beach Club did not begin construction of the beach cabana club, and eventually abandoned that particular use.
On May 22, 1957 the Building Zone Ordinance was amended to prohibit the erection of multiple family dwellings in “ Business ” districts, but to permit multiple family dwellings in ‘ ‘ Residence C-A ’ ’. However, soon thereafter, the defendant Nassau Beach Club petitioned the Town Board for a change of zoning of the southerly or oceanside part of its property from “Business” to “Residence C-A” (which permitted multiple family dwellings), and for a release of the restrictions theretofore recorded. A hearing thereon was held on June 25, 1957 and on August 15, 1957 the Town Board amended the Building Zone Ordinance with respect to the oceanside portion to ‘ ‘ Residence C-A Again, the rezoning was absolute and without any condition.
It should be stated at the outset that the enactment or the amendment of a Building Zone Ordinance is a legislative act, and that the burden of proving a legislative act unconstitutional or otherwise invalid is upon the assailant. If the validity of the ordinance is fairly debatable, the judgment of the legislative *760 body is conclusive and beyond interference by the courts (Levitt v. Incorporated Vil. of Sands Point, 6 N Y 2d 269; Wiggins v. Town of Somers, 4 N Y 2d 215; Rodgers v. Village of Tarrytown, 302 N. Y. 115; Shepard v. Village of Skaneateles, 300 N. Y. 115; Gregory v. Incorporated Vil. of Garden City, 18 Misc 2d 478, 484 [Sup. Ct., Nassau County]; Linn v. Town of Hempstead, 10 Misc 2d 774, 775, 782 [Sup. Ct., Nassau County]).
The first contention by the plaintiffs is that the 1957 amendment is illegal ‘ ‘ spot zoning ”. However, it is fundamental that if the rezoning was part of a comprehensive plan or scheme for the good of the area involved a possible depreciation in the value of the plaintiffs’ properties near the subject property is not of too great significance, for the pecuniary profits of an individual are secondary to the public welfare (Shepard v. Village of Skaneateles, 300 N. Y. 115, 120, supra; Linn v. Town of Hempstead, 10 Misc 2d 774, 782, supra). Here the plaintiffs chose to use as their only evidence the testimony of members of the Town Board. These members testified that the board’s actions were in pursuance of a comprehensive plan of zoning for all the Lido-Point Lookout area. These conclusions were supported by facts and evidence, and there was no evidence of any kind by experts or otherwise to contradict, counteract or modify the testimony by the Town Board members. Thus, on this issue the plaintiffs have failed to establish unconstitutionality beyond fair debate or beyond reasonable doubt.
Another contention by the plaintiffs is that both the 1953 and 1957 amendments were zoning by contract and, therefore, void. As far as the 1953 amendment is concerned, the attack comes too late. Since 1953, and before this action was started on October 28, 1957, six cabana beach clubs, costing enormous amounts of money, were constructed and put into operation. In short, there has been a tremendous change of position on the part of at least six landowners, and the whole area south of Lido Boulevard is no longer as desirable for one-family residences. The plaintiffs have come into a court of equity for relief, but their attack upon the 1953 amendment is defeated by the doctrine of laches.. Furthermore, the attack upon the 1953 and 1957 amendments as being zoning by contract must also fail. These zoning amendments were absolute and unconditional, and there is nothing to show 1 ‘ zoning by contract ’ ’. Furthermore, any restrictions required by the town or imposed on the landowners were clearly within the governmental powers of the Town Board to protect the best interests of the people in that area at that time. Be that as it may, the imposition of such conditions *761 as claimed here as bases for zoning amendments does not invalidate the amendments (Church v. Town of Islip, 8 A D 2d 962 [2d Dept.]). Furthermore, an amendment to a Zoning Ordinance is a legislative act. Therefore, this action by the Town Board as recorded in its journal may not be attacked collaterally, and the courts may not inquire into the motives of the board nor go behind the duly enacted legislation of the board in an attempt to seek its motive (Linn v. Town of Hempstead, 10 Misc 2d 774, 781, supra; Loos v. City of New York, 257 App. Div. 219, 223 [2d Dept.]; Nappi v. La Guardia, 184 Misc. 775, affd. 269 App. Div. 693, affd. 295 N. Y. 652).
Then, too, the plaintiffs have failed to prove any damage or detriment to them, and they are not ‘ ‘ aggrieved ’ ’ parties. So far as the plaintiffs and other members are concerned, the rezoning from “ Business ” to “ Residence C-A ” was an upgrading to a more highly restricted zone. It was an upgrading from a zone which permitted stores, business and office buildings, hotels, and lodging and boardinghouses to two-family dwellings and to multiple dwellings limited to 2% stories and a density of 20 families to the area. Most of the plaintiffs were so far from the subject premises that they failed to show how they were affected in any way by the 1957 rezoning. Plaintiff Gates, who lived in Lido, was to the west of the subject property, and a half to three quarters of a mile aAvay. The Channels Homes plaintiffs, the nearest ones to the subject property, were also not adversely affected. They Arere at least 550 feet away from the subject property and on the north side of Lido Boulevard. The Channels Homes residences were built, developed and sold in 1956 and 1957 near to and after the installation of a United States Hike Base, and also near to and after the six large cabana beach clubs were constructed and in full operation. The evidence offered by the plaintiffs to establish a lessening of their residence values by reason of the 1957 zoning amendment was innocuous. Their expert contended that the values of the plaintiffs’ properties would be adversely affected more by the 2%-story, 20-family-per-acre, multiple dwelling apartments, as permitted under the 1957 zoning amendment, than by the stores, business and office buildings, hotels and lodging and hoarding-houses permitted under the prior Zoning Ordinance. He said that whatever the value of the Channels Homes residences might be, the proximity of multiple dwellings as permitted under the amended ordinance would have “a 10 to 15% effect on the value ”. He did little to back up his opinion, but depended upon his past experience to state that the 2%-story, 20-family-per- *762 acre, multiple dwellings would cause greater congestion than a seventh cabana beach club with its hundreds of cars in its parking space and thousands of guests, and that there would be a different type of occupancy, pride of ownership and social prestige among* the apartment dwellers. These reasons were extremely unconvincing. Furthermore, this expert admitted that the impact upon the Channels Homes by stores, business and office buildings, hotels and lodging and boardinghouses, permitted under the prior “Business” zone, would be “ the same percentage as if apartment houses were introduced, about 10 or 15% ”. Thus, their own expert testified that the plaintiffs would not in any way be adversely affected by the 1957 amendment. Thus, the civic association plaintiffs have no standing to maintain this action; they own no property which could be affected adversely by any of the zoning amendments (Deligtisch v. Town of Greenburgh, 135 N. Y. S. 2d 220, 223 [Sup. Ct., Westchester County]; Twenty-One White Plains Corp. v. Village of Hastings-on-Hudson, 14 Misc 2d 800 [Sup. Ct., Westchester County]; also, Feldman v. Nassau Shores Estates, 12 Misc 2d 607 [Sup. Ct., Nassau County], affd. 7 A D 2d 757; Matter of Property Owners Assn. v. Board of Zoning Appeals, 2 Misc 2d 309 [Sup. Ct., Nassau County]). Nor are the plaintiffs whose residences are in West Lido or in Point Lookout in any better position; they have shown no detriment of any kind. As for the Channels Homes plaintiffs, their whole case revolved around one expert; he failed to show any detriment to them by reason of the zoning amendments (Deligtisch v. Town of Greenburgh, supra; Twenty-One White Plains Corp. v. Village of Hastings-on-Hudson, supra; Rose v. City of New Rochelle, 19 Misc 2d 599 [Sup. Ct., Westchester County]).
Other contentions made by the plaintiffs do not warrant discussion.
The complaint is dismissed.
This is the decision of the court pursuant to section 440 of the Civil Practice Act. Submit judgment.