Bernard S. Meyer, J.
In this article 78 CPLR proceeding petitioner seeks reversal of a decision of the respondent Board of Zoning Appeals which revoked a building permit for a restau *972 rant granted to petitioner. In an earlier prohibition proceeding, petitioner sought to prevent the board from hearing the appeal of respondent Carman Community Association, Inc., on the ground that its appeal was not timely. In denying the writ of prohibition, this court ruled that since timeliness of the appeal depended, under the rule of Matter of Pansa v. Damiano (14 N Y 2d 356) and Matter of Highway Displays v. Zoning Bd. of Appeals (32 A D 2d 668), upon when appellants reasonably became chargeable with notice and whether there was undue delay or laches, it could not be said that the board was without jurisdiction. The point that a civic association had no standing to appeal was not considered, though briefed, because not raised in the petition.
At basic issue in this proceeding is the question whether the use for which the permit was granted is a “ restaurant ”, which is a permitted use in the Business District within which petitioner ’s property is located, or a “ drive-in restaurant ’ ’ which is permitted only as a special exception use after application to the board. The board ruled, after a hearing, that the appeal was timely, that the Association was aggrieved, and that the use was a drive-in restaurant, and revoked the permit. In this proceeding petitioner argues that it has expended or committed some $75,000 to the building and, therefore, has a vested right to complete it, that the use is a restaurant rather than a drive-in restaurant, that the Association is not aggrieved and the appeal not timely. A further point that one of the board members who voted for the decision now in question was not present at the hearing was not briefed or argued and is deemed abandoned. The Association pleads three defenses: (1) the decision on the application for a writ of prohibition is res judicata of its standing, (-2) petitioner has not exhausted her administrative remedies since she has made no application for a special use permit, (3) petitioner misrepresented the nature of the operation to the Building Department. The decision of the board is reversed and building permit No. 6902841 is reinstated, but insofar as the petition requests that the court direct the issuance of a certificate of occupancy it is denied as premature, the building being as yet unfinished1.
Concluding as it does that the decision of the board is erroneous as a matter of law on the questions of standing and of use, the court does not find it necessary to consider whether the Association’s appeal was timely taken. The Association’s defenses are overruled; the first, on the ground that absence of standing goes to the capacity of a party rather than the jurisdiction of the board over the parties or the subject matter and, *973 therefore, could not have been the basis for issuance of a writ of prohibition even if properly raised in the earlier proceeding; the second, because petitioner cannot be required to seek as a matter of grace that which she is entitled to as a matter of right and, therefore, is entitled to immediate review of the decision revoking her permit (see Dowsey v. Village of Kensington, 257 N. Y. 221, 231; Matter of Adams Holding Corp. v. Van Rosendaal, 15 Misc 2d 498; cf. Matter of Calabrese v. Chave, 33 A D 2d 689, 690); the third, for reasons hereafter stated.
On the remaining two points in issue the board’s decision is contrary to decisional law binding upon it and, on the question of use, is not supported by substantial evidence and is contrary to the board’s own earlier decision as well.
Standing to appeal is governed by subdivision 2 of section 267 of the Town Law which provides that appeal to the board from a determination made by an administrative official ‘ ‘ may be taken by any person aggrieved ”. No case construing the words “ person aggrieved ” as used in that subdivision has been found, but neither the Association nor the board has suggested any reason, and none occurs to the court, why they should be construed any differently in that subdivision than they are in subdivision 7, which gives to ‘ ‘ Any person * * * aggrieved by any decision of the board of appeals ” the right of review in an article 78 proceeding. That a civic association which does not own property (and the hearing minutes at page 2118 establish that Carman Community Association does not) is not a person aggrieved entitled to review under subdivision 7 is the flat holding of Matter of Manor Woods Assn. v. Randol (29 A D 2d 778); Matter of Moore v. Burchell (14 A D 2d 572, mot. for lv. to app. den. 10 N Y 2d 709); Matter of Lido Beach Civic Assn. v. Board of Zoning Appeals (13 A D 2d 1030); Point Lookout Civic Assn. v. Town of Hempstead (22 Misc 2d 757, affd. 12 A D 2d 505, affd. 9 N Y 2d 961); Matter of Mueller v. Anderson (60 Misc 2d 568); Matter of Miller v. Village of East Hills (41 Misc 2d 525); Matter of Property Owners Assn. v. Board of Appeals (2 Misc 2d 309); see Bayport Civic Assn. v. Koehler (138 N. Y. S. 2d 524). Without mention of any of those authorities, the board predicated its holding “ that the appeal herein was brought by a person aggrieved1 ’ ’ on its finding that the Association “ is a membership corporation, which was merely a vehicle, acting on behalf of its resident property owner members. The Board heard the testimony of both Mr. Stein and Mr. Mummery, who are members and officers of the corporation, as well as nearby property owners. It is clear that they are aggrieved persons * * *. The Board finds that the persons *974 here concerned are affected by the proposed land use and that the appeal has been brought by persons aggrieved. To rule otherwise would be to lay emphasis on form rather than substance.”
The egregiousness of the error is evident when one reflects that (1) it must have occurred to the courts that decided the cases cited in the preceding paragraph that each of the civic associations involved was also ‘ ‘ acting on behalf of its resident property owner members ”, yet each was held without standing, (2) Mr. Stein testified that he lived “ five or six blocks ” away and Mr. Mummery testified that he lived ‘ ‘ As the crow flies * * * about six blocks ” and that the record contains no evidence of any special damage to either of their properties, or to the property of Mr. Newill, a member of the association who testified he lived within 300 feet (see Marcus v. Village of Mamaroneck, 283 N. Y. 325, 333; Matter of Haber v. Board of Estimate, 33 A D 2d 571; Matter of Moore v. Burchell, 14 AD 2d 572, supra). Moreover, in light of the subtle distinction, in relation to p’roperty values, between a restaurant as a permitted use and a drive-in restaurant as a special exception use, the court cannot presume, and the board should not have presumed, that there was such damage.
The foregoing is not to say that as a matter of policy the definition of persons aggrieved should not be broadened. That, however, is a matter for the Legislature rather than the board or this court,, neither of which has the power to correct the Association’s failure to have one or more of its members, who qualified as an aggrieved person and who had not already lost his right to appeal, join with it in taking the appeal.
If, however, it be assumed that the Association was a proper appellant, the board’s decision must nonetheless be reversed. Article 7 (§ X-1.0 and § X-1.8) of the Building Zone Ordinance allows, in a Business District, a ‘‘ Restaurant other than a diner, lunch wagon, drive-in restaurant, drive-in luncheonette, drive-in lunch counter or drive-in refreshment stand”; article 12, section Z-5.0 (c) (10) authorizes as a special use when approved by the Board of Appeals a ‘ ‘ Store or shop for the sale of food, refreshments or other edibles or drinks, which provides or makes available any facility (including but not limited to parking or standing space on premises for vehicles) for, or permits the consumption of such food, refreshments or other edibles or drink on the premises outside the building or structure occupied by such store and section Z-5.0 (c) (14) authorizes as a special use a 1 ‘ drive-in restaurant ’ ’. The ordinance contains no definition of a “ restaurant ”, a “ store or shop ” or a “ drive-in *975 restaurant ”. Unless the ordinary meaning of those words supplies criteria for distinguishing between them, it must follow that (1) the ordinance does not provide a sufficient standard to guide the board, and (2) since zoning ordinances, “being in derogation of common-law property rights, must be strictly construed ” (Thomson Inds. v. Incorporated Vil. of Port Washington North, 27 N Y 2d 537, 539; emphasis in the original), any ambiguity must be resolved in favor of petitioner.
That the board’s decision in this proceeding so construes the ordinance as to create rather than avoid ambiguity is evident from the dictionary definitions of the operative words. Webster’s Third New International Dictionary defines a “ restaurant ” (p. 1936) as: “an establishment where refreshments or meals may be procured by the public: a public eating house ”, a “ shop ” (p. 2101) as: “a building or room stocked with merchandise for sale ”, a “ store ” (p. 2252) as: “a business establishment where goods are kept for retail sale ” and: “a commercial establishment (as a bank, restaurant, or dry-cleaning shop) ”, and a “drive-in” (p. 692) as: “a place of business (as a motion-picture theater, bank or refreshment stand) laid out and equipped so as to allow its patrons to be served or accommodated while remaining in their automobiles.” If one uses the ordinary meaning of the words (and overlooks the possible legislative significance of the use of the word ‘ ‘ restaurant ” in sections X-1.8 and Z-5.0 [c] [14] and the use of the words “ store ” and “ shop ” in section Z-5.0 [c] [10]), then section Z-5.0 (c) (10) mandates a special use permit for any public eating house that provides parking space, for by definition of the section parking is a facility for consumption of food on the premises outside the building. If so, then section X-1.8 must be limited in its application to restaurants which do not provide parking space. That such cannot be the correct construction is, however, evident from article 14, section 0-19.0 (a) (11), which mandates parking space for every restaurant. Moreover, if one applies the ordinary meaning of “ drive-in ”, it is evident that a ! ‘ drive-in restaurant ” is a public eating house laid out and equipped so as to allow patrons to be served or accommodated in their cars, and that a public eating house which provides a reasonable number of parking spaces in relation to its inside table accommodations cannot be classified as a “ drive-in restaurant ”, as the board has done here, simply because trash cans are provided in the parking areas, paper plates are used and a quick service menu is provided. To paraphrase the holding of the Court of Appeals in the Thomson Inds. case (27 N Y 2d 537, supra), a strict construction of the term “ drive-in restaurant ” *976 requires that it be held to include only an operation devoted primarily or exclusively to service of patrons in their cars. The term is not reasonably applicable to an operation in which no such service is provided even though some patrons may in fact consume the food in their cars.
The construction thus arrived at is sustained by Matter of Dengeles v. Young (1 Misc 2d 692, revd. on other grounds 3 A D 2d 758); Matter of Burke v. O’Connor (53 Misc 2d 669); and State ex rel. Spiccia v. Abate (2 Ohio St. 2d 129, overruled on other grounds by State ex rel. Sebarco Corp. v. Berea, 7 Ohio St. 2d 85; see, also, Ann. 82 ALB 2d 989); and by the respondent board’s own decision in Matter of McCurdy (Case No. 769, decided Jan. 16, 1970). Matter of Dengeles (supra) concerned whether a “ diner ” was to be considered a “ restaurant ” and thus a permitted use, or simply of the same general character as a restaurant and thus a special exception use, under an ordinance which did not define the term “ restaurant ”. Mr. Justice Samuel Babin’s conclusion that it was a permitted use was indorsed by the Appellate Division, which noted, however, that amendment of the ordinance after the decision below necessitated reversal. In Matter of Burke v. O’Connor (supra), on facts less favorable to the property owner (only '28 seats but 50 parking spaces in that case, as against 64 seats and 24 parking-spaces in this case) and under an ordinance distinguishing by definition between a “ Full-service Bestaurant ” and a “ Drive-in Bestaurant ”, Mr. Justice Jasen (as he then was) held that since there was no indication that the proposed restaurant would provide service to patrons while they remained in their automobiles, the operation was a full-service restaurant and the property owner was entitled to a building permit. In the Abate case (supra, p. 130) the Supreme Court of Ohio held that a Dairy Queen 1 ‘ where all services to the purchasers are to take place inside the building, and where it is contemplated that much of the food will be eaten at tables provided for that purpose ” was properly classified as a “ restaurant ” rather than a “ drive-in restaurant ” notwithstanding that “much of the food may be carried to the parked cars and there eaten or carried out and eaten entirely off the premises.”
Moreover, considered on the facts rather than solely on the law, the board’s finding that the “Drummer Boy ” to be operated on petitioner’s property is a “drive-in restaurant” is not sustained by substantial evidence. That finding is based on the facts that “ Drummer Boy ” is a fast food operation and part of a franchised business in which at other units patrons ate both in the structure and in the car and many trash cans were *977 provided in parking areas for the disposable food packaging. Those findings, however, ignore the lease between petitioner and the “Drummer Boy ” parent company, which expressly provides that ‘ ‘ The premises shall be used only for restaurant purposes, other than a * * * drive-in restaurant ” and that 1 ‘ Lessee represents that the maintenance and operation of a Drummer Boy Restaurant on said premises qualifies for such restaurant use and covenants that the premises will not be permitted to be used for any other purposes ”, and the uncontradicted testimony of petitioner’s witness that in negotiating the lease he had made clear that lessee “ would have to limit their operation solely to a sit-down restaurant, as clarified by the Zoning Ordinance of the Town of Hempstead. ’ ’ They ignore also the facts that the structure is a permanent, fully enclosed, air-conditioned building with a seating capacity of 64, with toilet facilities that can only be reached from the inside, with parking facilities for '2:4 cars, no intercom equipment or other facilities whereby orders can be transmitted from persons outside to employees either out or inside, and with all of the food being purchased in the structure. On facts less favorable to the property owner (only 36 seats; outside toilet facilities), the board in Matter of McCurdy (supra) held the operation to be a restaurant rather than a drive-in, and noted that it could not base its decision on speculation or fears and could rely only on facts. Quite obviously, since petitioner’s permit was revoked before the completion of the building, the conclusion of the board that the proposed use “is a ‘ drive-in ’ restaurant ” (emphasis supplied) is based on speculation and is premature. It is not without significance that should the business, when actually put into operation, function as a “ drive-in ’ ’ rather than as a “ restaurant ”, the town need not rely solely on petitioner to enforce the covenant in the lease, but has its own right, wholly independent of the lease, to enjoin the violation of the ordinance that would be involved in operating a 1 ‘ drive-in ” in a building constructed under a permit for a “ restaurant ” (Matter of Carpenter v. Grab, 257 App. Div 860, mot. for lv. to app. den. 281 N. Y. 885).
Grounds for dismissal of the Association’s third defense of misrepresentation are evident from the foregoing. Though perhaps unnecessary, the court notes further that the board made no. finding of misrepresentation, though the point was urged before them, and that the Association has come forward with no evidence to suggest that there was a misrepresentation, as indeed they would be hard put to do in the face of the lease covenant recited above.