■ Bertram Harnett, J.
The Village Zoning Board of Appeals of Port Washington North has denied the application of the well-known McDonald’s food chain corporate real estate entity, Franchise Realty Interstate Corp. (hereinafter McDonald’s) for a conditional use permit. The board found that the contemplated activity at McDonald’s being a drive-in and eat-out place, fell within uses prohibited by local ordinances, and that, in any event, insufficient parking spaces were available for the facility. McDonald’s does not attack the validity of these zoning rules in this article 78 proceeding, but instead challenges the board’s determination under the applicable ordinances, as arbitrary and unreasonable.
The proposed site for the McDonald’s restaurant is the Sound-view Shopping Center on Shore Road, a nine-acre spread presently improved with three separate buildings housing a professional office, movie theatre, 15 retail stores and two small restaurants, and a large parking field with 486 car spaces. The existing buildings are located in the northwest portion of the parking area; McDonald’s plans to build its store on a 100 feet by 100 feet leased area in the southeast corner.
The entire shopping center is zoned as a business district. We approach the problem mindful of the general rule that zoning ordinances which restrict the use of private property in derogation of the common law, must be strictly construed, and any ambiguity or uncertainty of ordinance application must be resolved in favor of free property usage. (Thompson Ind. v. Incorporated Vil. of Port Washington North, 27 N Y 2d 537, 539; Matter of 440 East 102nd St. Corp. v. Murdock, 285 N. Y. 298, 304.) However, it is nonetheless true that the duly enacted zoning ordinances of a locality determine the ways in which land may be used and the burdens of proof imposed upon those who wish to engage in prohibited uses.
The board’s first objection is that the proposed McDonald’s, with 104 inside seats, is a place of public assembly, but lacks the requisite number of 10 feet by 20 feet parking spaces for that type of facility. A “ place of public assembly ” is defined in the State Building Code for general building construction as a space where more than 99 persons congregate or gather for amusement, athletic, civic, dining, or similar purposes. Under article VII (code sections dealing with business districts), section 9 of the building zone ordinance of the Village of Port Washington North, a place of public assembly is required to have *1063 one parking space for each employee and one space for every four persons to be legally accommodated. The McDonald’s would have about 20 employees working at any given time.
However, the court does not find this objection insurmountable. It is doubtful that the State Building Code’s definition of “ place of public assembly ” applies, since the code relates to construction matters, not land use restriction, and “ zpning ordinances ” are specifically excluded from its ambit. (Executive Law, § 372, subd. 4.) “ Place of public assembly ” is not defined in the village code, nor is the State Building Code definition adopted by reference. There are simply no guidelines to indicate that the contemplated McDonald’s is a place of public assembly for zoning purposes. The parking spaces available fall well within ■the number required of “ retail stores ” generally. (Building Zone Ordinance of the Village of Port Washington North, art. VII, § 2.) Further, petitioner has offered to develop 27 additional parking spaces near the proposed site, and, while the board questions access to these spaces, it appears that there is an easement to them on the intervening parcel which would permit cars and people to cross over. Finally, McDonald’s agreed, in any event, to lower its seating capacity to under 100 if the parking question were a major hurdle. On the whole, there appear to be sufficient spaces surrounding the site when viewed in conjunction with reasonable conditions imposed for their site and use. The board’s third affirmative defense is therefore dismissed.
Vet, the board’s two major objections contained in its first and second affirmative defenses go more to the heart of McDonald’s business. The board has classified the proposed restaurant as a “ drive-in ” establishment which allows food and beverage consumption on the premises, but outside of the building. Under section 3 of article VII of the ordinance of the Village of Port Washington North, property may be conditionally used for a ‘ ‘ restaurant ’ ’ upon obtaining the approval of the Board of Appeals, provided it is not “ the tvpe(s) of restaurant(s) commonly known as: ‘ Drive-ins ’ ”.
Article VII (§2, subd. [5]) provides: “ The foregoing permitted uses are intended to be limited to shops and stores for the sale at retail of consumer merchandise and service where the transaction with the consumer and the operation of the business is conducted entirely within a building.
The following types of uses are therefore prohibited:
(a) Drive-in establishments:
(b) Shops or stores which make 'available any facility for, or *1064 which permit the consumption of food or beverage on the premises outside a building ’
While there would be no outdoor tables at the proposed facility, by McDonald’s own estimate, 10-15% of its patrons buy the quick order, portable, and packaged food and beverages at the counter, then carry them outside to their cars, and have their snack or meal in stationary automobiles parked nearby, all with the restaurant’s permission. The board’s estimate of 30%, garnered from observation of a similar McDonald’s, located in a Northport Plaza and recommended by petitioners to the board for comparison viewing, does not seem unreasonable, either, particularly during the warmer months.
There is authority cited for finding that McDonald’s is not a “ drive-in ” establishment. (See Matter of Vitolo v. Chave, 63 Misc 2d 971.) Yet, the ordinance here appears to permit only those businesses which are “ conducted entirely within a building ”, thereafter enumerating some .specific types of businesses not falling within the permitted classification and being then prohibited.
The court does not believe that the proverbial ‘ ‘ car-hop ’ ’ service is the primary or only determinant for classifying an eating establishment as a “ drive-in ’ ’. Any establishment which has a significant component of its business in eating in parkéd adjoining cars may be characterized as a “ drive-in ”. This is particularly so where the manner of packaging and service is designedly conducive to such activity.
The lengthy discussion before the board regarding proper supervisory personnel to police the patrons parking around lends further credence to the notion, observable at restaurants which have a combined sit-down, take-out business, that a substantial number of customers do bring their food outside the restaurant to eat on the premises by or inside their cars. Bating food in cars is not the problem, but rather the increased outdoor activity which it entails. This would seem to be the vice for land use purposes of the commonly known “ drive-in ” since it is the rapid flow and the visible presence outdoors of people, with greater opportunity for litter and aggravating noise and activity, which underlies singling out such restaurants as prohibited uses, permitted only upon variance obtainment.
In any event, regardless of “ drive-in ” characterization, the proposed use was clearly a shop which was to “ make available any facility for, or which permit(s) the consumption of'íóod'or beverage on the premises outside a building ”, and as such, is prohibited under the over-all governing zoning ordinance. In *1065 sum, then, article VII of the Building Zone Ordinance of the Village of Port Washington North excludes this use from being conditionally permitted and prohibits it entirely from uses permitted without limitation.
There is a crucial difference between a conditional use permit and a variance. The permit is more easily obtainable, being issued upon a general showing of compliance and reasonableness with respect to requirements. (Matter of Freitag v. Marsh, 280 App. Div. 934.) A variance which abrogates a use specifically prohibited by local law is obtainable only upon a showing of practical difficulty, unnecessary hardship or economic harm. (Matter of Village of Bronxville v. Francis, 1 A D 2d 236, affd. 1 N Y 2d 839; see Matter of Otto v. Steinhilber, 282 N. Y. 71, 75; Matter of Fulling v. Palumbo, 21 N Y 2d 30.)
Petitioner’s application was made on the incorrect premise that a conditional use permit could be issued for its restaurant. The proof given fell short of the showing of a “ practical difficulty ’’required to obtain the required variance of the prohibited use. Accordingly, the board’s determination that petitioner’s proposed operation fell within a prohibited use classification and that the greater burden required to overcome the prohibition had not been carried, was not unreasonable or arbitrary.
Accordingly, the petition is dismissed without prejudice to petitioner’s rights to submit further modifications or to request a variance.