JACOB BLUMBERG et al., Appellants, v. CITY OF YONKERS et al., Respondents.

Second Department, March 26, 1973.

*Wekstein, Friedman & Fulfree (Morton N. Wekstein* of counsel), for appellants.

*Eugene J. Fox, Corporation Counsel (Clarence R. Eisen* of counsel), for City of Yonkers and others, respondents.

*Rathkopf & Rathkopf* and *Myron Greene (Arden Rathkopf* of counsel), for Granger-Riverdale Corp. and another, respondents.

SHAPIRO, J. In an action to enjoin the use of certain real property for supermarket purposes, for a declaration of the invalidity and illegality of certain general ordinances and for a declaration of the rights of the parties, the plaintiffs appeal from a judgment of the Supreme Court, Westchester County, which, after a nonjury trial, (1) dismissed the complaint, (2) adjudged that the ordinances in question had been validly enacted, (3) declared that the property was validly classified in the " B " zoning district and (4) vacated a prior order restraining the defendants from taking further steps with respect to the completion of the building on the property.

The property consists of 13 lots located on the west side of Riverdale Avenue in Yonkers and abuts Belvedere Drive to the north. It is located about three blocks north of the New York City line. The 13 lots are contiguous. They have a depth of 76 feet and a frontage of 344 feet on Riverdale Avenue. The home of plaintiffs Blumberg abuts Lots 1 and 2 immediately to the west of the subject property.

From 1929 until 1953 all property on both sides of Riverdale Avenue from the city line (between New York City and Yonkers) to a point about four blocks north of the subject property was zoned " BA ", a commercial classification which also permitted

high density apartment houses. A 1953 zoning ordinance left Lots 1 through 4 in the "BA" district, but placed Lots 5 through 13 in the "A-1" (residential) district. The ordinance permitted supermarkets in a "BA" district but not in an "A-1" district.

Some years thereafter, Silver Distributing Company of New York, Inc. purchased the subject property and applied to the Building Superintendent of Yonkers for permission to build a supermarket on Lots 1 through 4 and on the adjoining northernmost 21 feet of Lot 5. It sought to use the remainder of the property for accessory parking purposes. When Silver's request for a permit was denied, Silver appealed to the Zoning Board of Appeals of Yonkers for a variance to construct the supermarket on the northern portion of Lot 5 and a special exception use for accessory parking on the remainder of the property. These applications were granted by the Zoning Board of Appeals. However, the board's power to grant a special exception use permit was subject to the approval of the Common Council of Yonkers.

On October 20, 1958 the Blumbergs commenced a proceeding under article 78 of the CPLR to review the action of the board in granting the variance. The Special Term dismissed the proceeding, but we reversed and annulled the variance on the ground that "one who knowingly enters into a contract to purchase land for a prohibited use cannot thereafter have a variance in the use of the premises on the ground of unnecessary hardship" and were affirmed by the Court of Appeals (*Matter of Blumberg* v. *Feriola,* 16 Misc 2d 1001, revd. 8 A D 2d 850, 851, affd. 7 N Y 2d 852).

That proceeding involved only the variance. On November 12, 1958, during the pendency of the proceeding, the Common Council disapproved the special exception use permit based upon findings that the accessory parking would adversely affect the character of the district and the health and safety of residents in the area.

Unfortunately, no stay had been obtained pending the appeal from the dismissal of the Blumbergs' article 78 proceeding. Accordingly, construction went ahead on the supermarket and a substantial portion was finished before the work was halted by the Building Superintendent when this court handed down its decision.

While the appeal was pending in the Court of Appeals, Silver sold the subject property to Riverdale Corporation. Riverdale applied to the Common Council for a change of the zoning classification of Lots 5 through 13 to "BA". Pursuant to the ordi-

nance, the Common Council submitted the request to the Planning Board of Yonkers for report and recommendation. The Planning Board recommended denial on the ground that the rezoning would conflict with the city's general guide plan issued in 1958 and would depreciate the value of abutting improved parcels. Thereafter, on January 14, 1960, Riverdale withdrew its application. When it renewed the application some months later the Planning Board again recommended denial. The Common Council thereupon denied the application.

On January 15, 1962 the subject property was sold to Morka Realty Corp., which shortly thereafter made the same application for a change of the zoning of Lots 5 through 13 from "A-1" to "BA". The Planning Board again recommended denial.

The Common Council chose not to follow the recommendation of the Planning Board and, on May 8, 1962, enacted an ordinance changing the zoning of Lots 5 through 13 to "BA" for the sole use of accessory parking for a supermarket. Later that month, the plaintiffs in this action (and two others who are not parties hereto) commenced an action for a judgment declaring that ordinance to be illegal and void. The Special Term dismissed the action after trial on the ground that the plaintiffs lacked standing. We reversed and found that the Blumbergs had standing and that the 1962 ordinance was an invalid exercise of police power as it constituted spot zoning intended exclusively for the benefit of the owners of the property. The Court of Appeals affirmed (*Blumberg* v. *City of Yonkers*, 21 A D 2d 886, affd. 15 N Y 2d 791).

Defendant Granger Riverdale Corp. apparently purchased the subject property during the pendency of the second appeal in that action. In May, 1965, following the decision of the Court of Appeals, Granger obtained a special exception use permit, allowing accessory parking on Lots 5 through 13 on condition that the portion of the supermarket which extended onto Lot 5 be demolished. Three actions were thereupon commenced, one by the Blumbergs to declare the special exception use permit void, one by Granger to declare the 1953 zoning ordinance unconstitutional on the ground it was confiscatory as to Lots 5 through 13, and one by the City of Yonkers to require Granger to remove the portion of the supermarket constructed on Lot 5. On July 5, 1967 Mr. Justice Gagliardi held that the special exception permit had not been validly issued and that the 1953 zoning ordinance was constitutional and the city's request for a mandatory injunction was granted. No appeals were taken from those determinations.

On July 3, 1968 the Common Council enacted a new zoning ordinance known as General Ordinance No. 24–1968, which made numerous zoning changes in the city. It created new business and use districts. The whole of the subject property was placed in the " B " district, a zone for " neighborhood business and apartment houses, medium density." That zone permits super-market and accessory parking use. The ordinance was adopted after numerous public hearings. The Planning Board had rec-ommended that the property be placed in a residential " A-1 " district and the revised zoning map displayed at the hearing so indicated.

Following the passage of Ordinance No. 24–1968 the plain-tiffs brought a prior action to enjoin the defendants from using the property for any purpose not permitted in a residence dis-trict. Mr. Justice GAGLIARDI granted the plaintiffs' motion for a preliminary injunction. He noted that the last-minute amend-ment to the zoning ordinance amounted to private legislation and did not in reality form a part of the process of amending the zoning ordinance generally. He also held that there had, in effect, been no public hearing as to the change of zone and that, as no notice of the change had been given, the plaintiffs had been denied the opportunity to present arguments against the change. The order entered enjoined the use of the subject property for purposes not permitted in the " A " district. The opinion concluded by noting that the defendants could either promptly appeal to this court or re-enact the zoning ordinance on proper notice, thereby preserving for review the issue of spot zoning.

The Common Council exercised the latter option. Following a public hearing, on December 8, 1970 it re-enacted Ordinance No. 24–1968 as Ordinance No. 39–1970.

After trial of this action, Mr. Justice DILLON upheld the re-enacted ordinance. He thereupon granted judgment in favor of the defendants, dismissing the complaint, and made a declara-tion that the subject property is validly classified within the " B " zone. This is the judgment now under review.

All parties are agreed that the prior decisions of this court and the Court of Appeals are *res judicata* as to the issue of standing. There is, therefore, no issue before us as to the stand-ing of the Blumbergs to maintain this action. However, the prior determinations in the actions involving the subject property are not *res judicata* as to whether the subject property may be used to accommodate a supermarket.

The first suit (under article 78) established no more than that the predecessors in title of the current owners of the property were not entitled to a variance to use Lots 5 through 13 for accessory parking because their claimed hardship was self imposed. The second suit (for declaratory judgment) determined that the 1962 ordinance, which singled out Lots 5 through 13 for use for accessory parking purposes and for no other purpose, was spot zoning and had not been adopted pursuant to a comprehensive plan.

We are now confronted with the question of the validity of a comprehensive ordinance adopted for the entire city. The fact that a previous ordinance, which permitted one use on a portion of a piece of property, was held invalid does not prevent a subsequent rezoning pursuant to a comprehensive plan. To hold otherwise would sterilize property in perpetuity. No showing of a change of circumstances must be made for a legislative body to rezone property (*Levitt* v. *Incorporated Vil. of Sands Point,* 6 A D 2d 701, affd. 6 N Y 2d 269). The prior attempt to enact an ordinance suffered from a defect. It was spot zoning not considered pursuant to a comprehensive plan. The 1968 and 1970 ordinances which (unlike the 1962 ordinance) placed the subject property in a business-residential district were new ordinances, substantially different from the prior ordinance which was declared invalid, and must therefore be considered upon their own merits (*Udell* v. *McFadyen,* 46 Misc 2d 804).

The plaintiffs contend that those portions of the 1968 and 1970 ordinances which affect the subject property are antagonistic to the comprehensive zoning plan of the City of Yonkers and were enacted solely for the benefit of the owner of the property. Such an attack may be successfully made in a proper case, but this is not such a case.

In *Udell* v. *Haas* (21 N Y 2d 463), the court held that a comprehensive plan is the essence of zoning and that in its absence there can be no rational allocation of land use. There therefore must be some showing that a change in zone does not conflict with the community's basic scheme for land use. One of the determining factors in deciding whether a zoning is part of a comprehensive plan is whether forethought has been given to the community's land use problems. The courts will not, however, examine the motives of local officials. The court went on to note (pp. 471–472): "No New York case has defined the term 'comprehensive plan'. Nor have our courts equated the term with any particular document. We have found the 'comprehensive plan' by examining all relevant evidence (*Rodgers

v. *Village of Tarrytown*, 302 N. Y. 115, 122, *supra*; *Thomas v. Town of Bedford*, 11 N Y 2d 428, 434–435, *supra*). As the trial court noted, generally New York cases ' have analyzed the ordinance * * * in terms of consistency and rationality ' (40 Misc 2d 265, 267–268). While these elements are important, the ' comprehensive plan ' requires that the rezoning should not conflict with the fundamental land use policies and development plans of the community (see *Santmyers* v. *Town of Oyster Bay*, 10 Misc 2d 614, 616; *Linn* v. *Town of Hempstead*, 10 Misc 2d 774; *Place* v. *Hack*, 34 Misc 2d 777; *Walus* v. *Millington*, 49 Misc 2d 104). These policies may be garnered from any available source, most especially the master plan of the community, if any has been adopted, the zoning law itself and the zoning map.''

Further, the court said of the change in zoning there involved (p. 475): '' Ordinance No. 60 not only did not conform to the village's general ' developmental policy ', but it was also inconsistent with what had been the fundamental rationale of the village's zoning law and map. The amendment was not the result of a deliberate change in community policy and was enacted without sufficient forethought or planning. The particular conditions existing in the area did not support the radical change, which ordinance No. 60 embodied.''

In *Albright* v. *Town of Manlius* (34 A D 2d 419, 423, mod. on other grounds 28 N Y 2d 108), the Fourth Department noted that zoning ordinances, as legislative enactments, are entitled to the strongest possible presumption of validity and that it is of no moment that the legislative body failed to follow the recommendation of the Planning Board (see, also, *Church* v. *Town of Islip*, 8 N Y 2d 254).

The 1968 and 1970 ordinances represent an attempt to zone comprehensively for the entire City of Yonkers. Most of the zoning changes were the result of years of study by independent consultants and the Planning Board. Although those experts did not recommend the change in zone of the subject property, an examination of the map and the surrounding areas reveals that the change was not antagonistic to the comprehensive plan. The supermarket use is in harmony with the surrounding neighborhood. There is no proof that this use will impair the stability of the residential neighborhood. No feasible purpose is served by the split zoning theretofore existing and, while it would have been equally rational for the entire parcel to be zoned either for residential or business-residential use, so long as the validity of the ordinance is even '' fairly debatable '' the legislative judg-

ment must control (*Levitt* v. *Incorporated Vil. of Sands Point,* 6 N Y 2d 269, 273, *supra*).

Accordingly, since the 1970 zoning ordinance was part of a well-considered and comprehensive scheme and did not conflict with that scheme, it may not be held invalid as spot zoning. Furthermore, though the change benefits the owner of the subject property, it is valid as it is not antagonistic to the city's comprehensive zoning plan.

The plaintiffs also contend that the notice of public hearing published prior to the enactment of the 1970 ordinance was defective. It is unnecessary to dwell upon the question of the validity of the 1968 ordinance in view of its reenactment in 1970. It does not appear that anyone but the plaintiffs opposed the zoning changes. The map which accompanied the publication (contrary to the plaintiffs' assertion) is clear and legible. The notice was specifically directed to the plaintiffs.

The plaintiffs do not assert that they (or anyone else concerned) did not have notice of the 1970 public hearings.

The Village Law (§ 178) and Town Law (§ 264) contain detailed requirements as to publication of notice of public hearings held to consider proposed zoning changes. However, section 83 of the General City Law, which governs zoning changes in Yonkers, contains no requirement of publication in newspapers. Special legislation dealing with Yonkers (see L. 1946, ch. 722; L. 1947, ch. 133) similarly contains no such requirement. Here, the adoption of the 1970 ordinance was preceded by publication. In this case publication and actual notice are sufficient notice (see *Shefler* v. *City of Geneva,* 1 Misc 2d 807). Even the strict requirements of notice statutes are often not adhered to in cases where the concerned parties have actual notice through publication of the proposed changes (see *Avelli* v. *Town of Babylon,* 54 Misc 2d 662, 664–665; cf. *Chase* v. *City of Glen Cove,* 41 Misc 2d 889, 893). In *Mallett* v. *Village of Mamaroneck* (283 App. Div. 1094, affd. 308 N. Y. 821) we held that even an erroneous description of the property in a publication was sufficient as it was definite enough to inform the owner of the affected parcel of the proposed change. The definite notice here given was also sufficient to inform the plaintiffs of the proposed change.

The final contention of the plaintiffs is that the ordinance is void because it contains penal provisions. They assert that a penal ordinance must be complete in itself and must (by virtue of section C3–10 of article III of the Yonkers City Charter) be published.

The 1968 and 1970 ordinances in evidence contain no such provisions. The plaintiffs assert that these provisions are contained in prior ordinances which were adopted by reference. This may be so. However, no attempt has here been made to enforce a penal provision. Any such provisions, assuming that they are invalid, are severable from the rest of the 1968 and 1970 ordinances which merely established various use districts. Furthermore, this contention was not raised at the Special Term.

The judgment therefore should be affirmed in all respects, without costs.

MARTUSCELLO, Acting P. J., GULOTTA, CHRIST and BENJAMIN, JJ., concur.

Judgment of the Supreme Court, Westchester County, entered September 7, 1972, affirmed, without costs.